GRAY v. LOUISVILLE & N. R. CO.

(Circuit Court, E. D. Tennessee. April 3, 1912.)

No. 1,529, at Law.

1. MASTER AND SERVANT (§ 111*)—SAFETY APPLIANCE ACT—DEFECTIVE CARS—
REMOVAL FROM SWITCH TO REPAIR SHOPS.

A car containing interstate commerce after having arrived in the yard
at destination preparatory to being transported to the private switch
track of the consignee was rendered defective by one of the couplers be-
ing jerked out, and the car left at one end without a coupler that would
operate automatically. Without being repaired, it was transported to
the private switch to be unloaded, and, after being unloaded, defendant
prepared to remove it to its shops for repairs, and for that purpose at-
tempted to couple it to another car standing on the switch which was
in good order, and was likewise to be removed to the railroad yards for
general uses, and at the time was attached to a switch engine. While
plaintiff's intestate was engaged in attempting to make a chain coupling,
the engine and car were shoved back against the defective car, and in-
testate was caught and killed. Held, that such movement of the car on
which the coupling had been destroyed was in violation of the Safety
Appliance Act (Act March 2, 1893, c. 196, 27 Stat. 531 [U. S. Comp. St.
1901, p. 3174]).

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§
215–217, 255; Dec. Dig. § 111.*]

2. RAILROADS (§ 229*) — REGULATION — SAFETY APPLIANCE ACT — PRIVATE
SWITCHES.

Where a private switch leading to a mill was used by defendant rail-
road company in transporting cars in interstate commerce to and from
the mill, as they were consigned, with the railroad's own engines and
crews, such track constituted a "railroad" and a part of defendant's line
to which the Safety Appliance Act (Act March 2, 1893, c. 196, 27 Stat.
531 [U. S. Comp. St. 1901, p. 3174]) was applicable.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 743; Dec. Dig.
§ 229.*

For other definitions, see Words and Phrases, vol. 7, pp. 5899–5908;
vol. 8, pp. 7777–7778.]

At Law. Action by J. R. Gray against the Louisville & Nashville
Railroad Company. On plaintiff's motion for a new trial. Granted.

This suit was brought by the plaintiff, a citizen of Tennessee, as admin-
istrator, against the Louisville & Nashville Railroad Co., a citizen of Ken-
tucky, and an interstate carrier of freight and passengers, to recover $20,-
000.00 damages for the death of the plaintiff's intestate, who was killed
while in the employment of the defendant as a switchman, by reason of
the defendant's alleged non-compliance with the provisions of the Federal
Safety Appliance Act (Act March 2, 1893, c. 196, 27 Stat. 531 [U. S. Comp.
St. 1901, p. 3174]). At the trial it was shown that the defendant had re-
ceived in its yard at Knoxville, Tennessee, a box car loaded with cotton,
which had come from another state consigned to the Brookside Mills, whose
plant was located in the suburbs of Knoxville, adjoining the defendant's
interstate line of railway, and about two miles distant from the Knoxville
yard. While this box car was being switched in the Knoxville yard prepara-
tory to being transported to the Brookside Mills, one of the drawheads and
couplers was jerked out, and the car left at one end without a coupler which
would operate automatically. Without being repaired, however, the box car
was transported to the Brookside Mills to be unloaded, and was there
placed for that purpose on a private switch track belonging to the Brook-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

side Mills, which connected with the defendant's line and extended to the warehouse of the Brookside Mills on its property, and which was used by the defendant in delivering freight to the Brookside Mills, under an arrangement the terms of which did not appear. After this box car had been unloaded and while it was standing on this switch track with several other cars, the defendant prepared to remove it to its shops for repairs and for that purpose attempted to couple it to another car standing on this switch track, which was in good order and was likewise to be removed from the switch track to the defendant's yard for general uses, this other car being at the time attached to the switch engine. While the plaintiff's intestate was engaged in attempting to make this chain coupling, under the orders of the conductor, the engine and car to which he was attempting to make the coupling were shoved back against the defective box car, and plaintiff's intestate was caught between the two cars and killed. The court, on the defendant's motion, granted peremptory instructions in its favor, on the ground that the box car in question was not subject to the Safety Appliance Act while being used upon a private switch track of the Brookside Mills, which was not a part of the line of the defendant's railway. The plaintiff moved for a new trial.

Pickle, Turner & Kennerly, of Knoxville, Tenn., for plaintiff.

J. B. Wright and J. G. Johnson, both of Knoxville, Tenn., for defendant.

SANFORD, District Judge.  [1] 1. It is clear that under the undisputed facts of this case the movement of the defendant's car on which the coupling apparatus had been destroyed and which was about to be attached to another car and removed to the repair shops was in violation of the Safety Appliance Act, under the doctrine of St. Louis Ry. Co. v. Taylor, 210 U. S. 281, 28 Sup. Ct. 616, 52 L. Ed. 1061; Chicago Ry. Co. v. United States, 220 U. S. 559, 31 Sup. Ct. 612, 55 L. Ed. 582; Delk v. Railway Co., 220 U. S. 580, 31 Sup. Ct. 617, 55 L. Ed. 590; Southern Ry. Co. v. United States, 222 U. S. 20, 32 Sup. Ct. 2, 56 L. Ed. 72, and Southern Ry. v. Snyder (C. C. A. 6) 187 Fed. 492, 109 C. C. A. 344, provided the Safety Appliance Act applied to the car while being handled on the switch track of the Brookside Mills. The case clearly does not come within the exception to the general rule stated in Southern Ry. Co. v. Snyder, supra, since at the time it had not been withdrawn from connection with vehicles in commercial use, but was on the contrary on this side track in connection with other vehicles in commercial use, and was being attached to another car in such commercial use preparatory to its removal.

[2] 2. I am furthermore of opinion, after careful consideration, that the ground upon which peremptory instructions were given in this case, namely, that the Safety Appliance Act did not apply to this car while on the switch track of the Brookside Mills, was erroneous. It appears, at least by inference, that there was some arrangement by which the defendant was permitted by the Brookside Mills to use this switch track in its interstate business, bringing in upon this track, unloading and removing therefrom cars containing interstate freight consigned to the Brookside Mills. In the recent case of Philadelphia R. Co. v. United States, 191 Fed. 1, 111 C. C. A. 661, it was held by the Circuit Court of Appeals for the Third Circuit that where a railroad

company operated its trains engaged in interstate commerce with its own engines and crews over the tracks of another company under a contract between them, such other tracks are a part of its line within the meaning of the Safety Appliance Act and its amendments so as to require cars operated upon them to be equipped with safety appliances as therein required. The doctrine of this case, in my opinion, is controlling in the case at bar. Furthermore the Hepburn amendment of 1906 (Act June 29, 1906, c. 3591, 34 Stat. 584 [U. S. Comp. St. Supp. 1911, p. 1285]) to the Interstate Commerce Act (Act Feb. 4, 1887, c. 104, 24 Stat. 379 [U. S. Comp. St. 1901, p. 3154]) provides that the term "railroad" as used in the Act shall include "all the road in use by any corporation operating a railroad, whether owned or operated under a contract or agreement or lease, and shall also include all switches, spurs, tracks and terminal facilities of every kind used or necessary in the transportation of the persons or property designated herein." In United States v. Geddes, 131 Fed. 452, 65 C. C. A. 320, it was held by the Circuit Court of Appeals for this Circuit that the Interstate Commerce Act and the Safety Appliance Act were in pari materia to such an extent that the definition of interstate commerce given in the Interstate Commerce Act should be followed in construing the Safety Appliance Act. By a parity of reasoning I am of opinion that the definition of a railroad given in the Hepburn amendment is to such extent in pari materia with the Safety Appliance Act that the line of the carrier's railway referred to in the Safety Appliance Act should be construed according to the definition of a railroad in the Hepburn amendment to the Interstate Commerce Act. This is especially true in view of the fact that the Safety Appliance Act is a remedial statute, to be so construed as to accomplish the intent of Congress (Johnson v. Southern Pac. Co., 196 U. S. 1, 25 Sup. Ct. 158, 49 L. Ed. 363; United States v. Central R. Co. [D. C.] 157 Fed. 893), and that its provisions "should not be taken in a narrow sense" (Schlemmer v. Railroad Co., 205 U. S. 1, 10, 27 Sup. Ct. 407, 408 [51 L. Ed. 681]), nor its undoubted humanitarian purpose frittered away by judicial construction. United States v. Railroad Co. (D. C.) 149 Fed. 486.

I therefore conclude that the car in question must be deemed to have been subject to the provisions of the Safety Appliance Act under the facts in evidence, and that for the reasons above stated the court was in error in granting peremptory instructions in the defendant's favor.

The plaintiff's motion for a new trial will accordingly be granted.