## CHARLES J. HOOD, Appellant, v. BALTIMORE & OHIO RAILROAD COMPANY.

### Division Two, March 4, 1924.

1. **SAFETY APPLIANCE ACT:** Interstate Commerce: Demurrer to Evidence. The jury have a legal right to weigh the evidence and draw therefrom every reasonable inference a fair-minded jury of reasonable intelligence might draw, and if plaintiff produces substantial evidence which, taken as true, warrants a recovery for the injury he sustained in going between cars to couple them, the court errs in sustaining a demurrer to the evidence.

2. ———: ———: Coupling Cars: Question for Jury. A partially made-up Baltimore & Ohio Railroad passenger train, the car furthest south being a mail car, was standing on track 28 at Union Station, St. Louis, about to depart for Cincinnati, Washington and New York. The Baltimore & Ohio tracks do not run into Union Station, but terminate in East St. Louis, and its trains are taken from Union Station to East St. Louis by Terminal engines and switching crews over Terminal tracks, but tickets are sold at Union Station to passengers departing on such trains, and the conductor, switchmen and porter in charge of them from the time they leave Union Station are Baltimore & Ohio employees. A Terminal engine took three refrigerator cars from track 24 at Union Station and ran them from the south in upon track 28, but they failed to couple automatically with the mail car. Three times they were driven against the mail car, but each time they failed to couple. Plaintiff testified that he was a car inspector in the employ of the Baltimore & Ohio, that his duty in part was to see that couplings were properly made in time for trains to depart, and when the mail car had failed to couple automatically after three impacts he went upon the track to examine and adjust its coupler, and while there the refrigerator cars were again driven back, and he was injured. The only signals to move the engine were given by the foreman of the Terminal's switching crew, and those signals were not seen by plaintiff. The failure of the cars to couple was due to the fact that the knuckle of the mail car would open, instead of remaining closed. *Held;* that the Baltimore & Ohio, the Terminal Company and the plaintiff were all engaged in interstate commerce at the time, and under the Safety Appliance Acts of Congress, which declare it to be unlawful for any common carrier to haul or permit to be hauled any car used in moving interstate traffic not equipped with

302 Mo. Sup.—39.

couplers coupling automatically by impact, plaintiff, upon his testimony alone, was entitled to have his case against the Baltimore & Ohio' submitted to the jury, regardless of its pleaded defenses of assumption of risk and contributory negligence.

3. ———: Coupling Cars: Proximate Cause of Injury: Assumption of Risk. Under the Safety Appliance Acts of Congress contributory negligence is no defense, and neither is assumption of risk unless the plaintiff's own negligence was the proximate cause of his injury; and where he testifies that, after three impacts of other cars against a mail car it failed to couple automatically, he, being a car inspector in defendant's employ, charged with the duty to see that the cars properly coupled, went upon the track, without notifying the foreman of the switching crew or signaling the engine, to examine and adjust the coupler, and the engine again drove the cars against the mail car and injured him, the question whether his own negligence was the proximate cause of his injury was one for the jury.

4. ———: On Defendant's Line: Working Arrangement Assumed. Where the western terminus of the lines of the Baltimore & Ohio was East St. Louis, and the train that was being made up, by the Terminal Company's engine and switching crew, on Terminal tracks at Union Station in St. Louis, was a passenger train for Cincinnati, Washington and New York, and tickets were sold to passengers at Union Station and the train was to be conducted by a Baltimore & Ohio conductor, switchman and porter from Unio Station to points beyond East St. Louis, it will be assumed, without evidence, that there was some working arrangement between the two companies, that they were acting in concert and that the Terminal was the agent of the Baltimore & Ohio, and it will be *held* that the injury to the car inspector, as he was attempting to adjust the defective coupler of a car of the Baltimore & Ohio train on the Terminal track at Union Station, occurred on the Baltimore & Ohio line, within the meaning of the Safety Appliance Acts of Congress.

Appeal from St. Louis City Circuit Court.—*Hon. H A. Hamilton,* Judge.

REVERSED AND REMANDED.

*Abbott, Fauntleroy, Cullen & Edwards* and *Brill & Weismantel* for appellant.

(1)    The Safety Appliance Act is highly remedial in its character; the purpose of Congress in passing the act was humanitarian; it was enacted for the better protection of railroad employees and travelers by rail; accordingly, it should be construed by the courts so far as its terms will permit so as to carry out fully the intention of Congress, and should not be frittered away by judicial decision.    Johnson v. So. Pac. Co., 196 U. S. 1; International Railroad Co. v. United States, 238 Fed. 317; United States v. Chicago Railroad Co., 149 Fed. 486; Wabash Railroad Co. v. United States, 168 Fed. 1.; Chicago Railroad Co. v. Voelker, 129 Fed. 522; United States v. Central Ga. Railroad Co., 157 Fed. 893; United States v. Chicago Co., 173 Fed. 684; United States v. Northwestern Pac. Railroad, 235 Fed. 965; Gray v. L. & N. Railroad Co., 197 Fed. 874.    (2)    Where a railroad company operates its trains engaged in interstate commerce over the tracks of another company, under a contract between them, such tracks are a part of its lines within the meaning of the Safety Appliance Act, and it is immaterial whether the railroad company actually uses its own engine to haul its cars or permits another company, under a contract between them, to do the hauling.    Philadelphia Ry. Co. v. United States, 191 Fed. 1; United States v. Southern Ry. Co., 285 Fed. 766; United States v. Northwestern Pac. Railroad, 235 Fed. 965; Gray v. L. & N. Railroad Co., 197 Fed. 874; Richey "Federal Employers Liability and Safety Appliance and Hours of Service Acts" (2 Ed.), p. 466, p. 143; United States v. Atlantic Terminal Co., 260 Fed. 779; United States v. Ches. & Ohio Ry. Co., 213 Fed. 748; Chicago, B. & Q. Co. v. United States, 211 Fed. 12; Campbell v. Canadian Railroad, 124 Minn. 245; Spaw v. Terminal Ry. Co., 198 Mo. App. 552.

*Fordyce, Holliday & White* and *Kramer, Kramer & Campbell* for respondent; *Morrison R. Waite* and *William A. Eggers*, of counsel.

(1)   When the plaintiff alleges specific acts of negligence on the defendant's part, his evidence and his right of recovery will be limited to the specific acts charged.   Chitty v. Iron Moun. & So. Ry. Co., 148 Mo. 64, 75; Evans v. Wabash Railroad Co., 222 Mo. 435, 453; McGrath v. Transit Co., 197 Mo. 97, 105; Roscoe v. Metrop. Street Ry. Co., 202 Mo. 576, 587.   (2)   In passing upon the sufficiency of the evidence challenged by demurrer, the general rule is that plaintiff's evidence, if not impossible or opposed to the physics of the case, or entirely beyond reason, is taken as true, and the plaintiff is further entitled to the benefit of every reasonable inference of fact arising on all the proof, but this does not relieve plaintiff of the necessity of producing substantial testimony to prove the issues involved; a mere glimmer or spark, a mere scintilla, will not do. Near v. Railroad Co., 261 Mo. 80, 91.   (3)   If appellant's own acts were the sole cause of his injury there can be no recovery.   Phillips v. Penn. Railroad Co., 283 Fed. 381; Copeland v. Heinz, 269 Fed. 361; Great Northern Ry. Co. v. Wiles, 240 U. S. 444.   (4)   Where a duty is imposed for the protection of persons in particular situations or relations, a breach of it, which happens to result in injury to one in an altogether different situation or relation, is not, as to him, actionable.   St. L. & S. F. Railroad Co. v. Conarty, 238 U. S. 243; Lang v. N. Y. C. Railroad Co., 255 U. S. 455; Davis v. Hand, 290 Fed. 73.

RAILEY, C.—On November 19, 1921, plaintiff sued the Chicago & Alton and the Baltimore & Ohio Railroad companies, in the St. Louis Circuit Court, for damages claimed to have been sustained by him as an employee of said defendants, on account of their alleged negligence.   On April 1, 1922, plaintiff amended his petition

by interlineation, and alleged therein that on February 24, 1921, he was in the employ of said defendants as a car inspector, and that on said date, while he and the defendants were engaged in interstate commerce, he was injured as hereafter stated, and that said injuries resulted, in whole and in part, from the negligence of said defendants and their servants, and from defects and insufficiencies due to the negligence of defendants in respect to their cars, engines and appliances. He alleges that on the date aforesaid he was engaged in connection with the movement and handling of cars, passengers, goods, wares, and merchandise, which were en route to and from various states of the Union; that plaintiff and defendants, at the time of his injury, were engaged in interstate commerce; that the cars, between which plaintiff was working when injured, were not equipped with couplers coupling automatically by impact, and which could be coupled without the necessity of men going between the ends of the cars, in violation of the laws of the United States, and of the Safety Appliance Act of March 2, 1893, Chap. 196, 27 Statutes at Large, p. 531, as amended by Act of March 2, 1903, Chap. 976, 32 Statutes at Large, p. 943. He alleges that while attempting to couple the cars above mentioned, by reason of the failure of defendants to have said cars equipped with proper couplers aforesaid, it was necessary for plaintiff, in order to effect the coupling between said cars, to go between the ends of same; that plaintiff did go between the ends of said cars, and attempted to adjust said coupler, while between the ends of said cars, so that they would couple; that while he was between said cars for the purpose aforesaid, by reason of defendants' failure to comply with the Federal Safety Appliance. Act, in the particulars aforesaid, his left hand was caught, crushed and mangled, in such manner as to necessitate the amputation of the thumb through the middle of the hand, including the first, second and third fingers, and first joint of the fourth finger, leaving a scar on said hand

which is tender and causes shooting pains. The remainder of the petition relates to plaintiff's injuries, and the damages which he claims to have sustained, which are placed at the sum of $25,000.

The second amended answer of the Baltimore & Ohio Railroad Company denied each and every allegation of the petition, except the averment that it is a corporation. It also pleaded that plaintiff assumed the risk of his injury, and further pleaded that appellant's injury was due to his own acts of negligence.

The evidence on the part of plaintiff tended to show that at the time of his injury a diner, two sleepers, a coach, a smoker, an express and mail car were standing on track 28 in the Union Station at St. Louis, Missouri; that all of the above were Baltimore & Ohio Railroad Company cars; that the *mail car* was at the south end of said train, which was known as Baltimore & Ohio Train No. 2; that it was an interstate-commerce train, carrying passengers to Cincinnati, Ohio, Baltimore, Maryland, Washington, D. C., and New York; that tickets were sold by the Baltimore & Ohio agents in St. Louis to all these points; that the above train was scheduled to leave St. Louis at 10 A. M. and the accident in question happened at 9:47 A. M. on February 24, 1921; that at the time of the accident passengers were boarding the cars under the supervision of a Baltimore & Ohio conductor, Baltimore & Ohio brakeman and porters.

The plaintiff offered in evidence an *agreement* between the Ohio & Mississippi Ry. Co. and the Terminal Company; and an agreement between the Baltimore & Ohio Southwestern Ry. Co., as successor of the Ohio & Mississippi Ry. Co., and the Terminal Company, but we are not referred to any testimony connecting respondent with said agreements or either of them. The above agrements relate to the rights of certain railroads named to participate in the use of the Terminal Railroad Company's terminal facilities, etc. Mr. James Henry Stoddard, foreman of the Terminal switching crew, testified

that the Baltimore & Ohio train is pulled out by a Terminal engine, with a Terminal engineer and fireman in charge, and that the Terminal engine and crew take said train to East St. Louis; that the Baltimore & Ohio tracks do not run into the Union Station, and that the terminus of the Baltimore & Ohio is at East St. Louis.

Plaintiff's evidence also tends to show that he was employed by the defendant Baltimore & Ohio Railroad Company as a car inspector, and that it was a part of his duty, as such, to see that couplings were made so that trains could depart on time; that on the day of the accident, three refrigerator express company cars of the A. R. Express Company were brought by a Terminal switch engine from track 24 to track 28, to be coupled to the Baltimore & Ohio cars on track 28; that several attempts were made to couple the refrigerator cars to the Baltimore & Ohio train; that the *lock on the coupler* of the Baltimore & Ohio *mail car,* at the end of said train, *failed to work;* that plaintiff stepped between the mail car and the refrigerator car to *examine* the coupler of said mail car, and that, while he was between said cars, the refrigerator car was backed against him, and inflicted the injuries complained of in petition.

Plaintiff's evidence tends to show that the Terminal engine attached to the refrigerator cars was not the engine which hauled the Baltimore & Ohio train No. 2 to East St. Louis, but was detached after the refrigerator cars were coupled to the Baltimore & Ohio cars, and that another Terminal engine and crew hauled the Baltimore & Ohio cars to East St. Louis; that the Baltimore & Ohio conductor was in charge of the operation of the train, consisting of said Baltimore & Ohio cars and a Terminal switch engine; that said conductor gave the signal to move said train without consulting the engineer of the Terminal engine; that aside from the foregoing, the Terminal had nothing to do with the operation of said train; that the Baltimore & Ohio conductor and brakeman performed their regular duties while the train was *en route* from St. Louis to East St. Louis; that the Ter-

minal Railroad Association never collected any fares, or looked after passengers, except on their own work trains.

Respondent, on cross-examination of plaintiff and his witnesses, elicited testimony tending to show that track 28 belonged to the Terminal Association of St. Louis; that *respondent* did not handle the cars on that track, or any of the cars at Union Station; that its lines *ended* at East St. Louis, and its trains were handled from East St. Louis to St. Louis over the Terminal Railroad Association's tracks by a Terminal Railroad Association engine and engine crew. This crew made several attempts to couple these cars to the mail car without success.

It appears that there was no difficulty in making the coupling, but when the engine moved forward the knuckle on the mail car would open instead of remaining closed; that Stoddard, the foreman, told appellant to keep out from between the cars and, without knowing that he was there, signaled the engineer to back the cars and attempt to make the coupling; that when the cars came together, appellant was between them and received the injuries complained of in petition.

Appellant stated at the trial that he was his own boss, and working under the direction of no one; that he had looked after the air and steam on the train and had seen these unsuccessful attempts to make the coupling; that he saw Stoddard, the foreman of the switching crew; that Stoddard did not tell him to go between the cars, but he went, because it was his duty to see that those things worked; that he would have gone in without Stoddard telling him to do so; that without saying anything to Stoddard, he went in to see if there was anything wrong with the coupler and, while between the cars, was injured.

It appears that appellant was on the west side of the cars and Stoddard was on the east side of same; that the cars in question were being handled, as above, by an engine and crew of the Terminal Railroad Associa-

tion; that the attempts to couple the cars were made by this crew, and all the signals to move the engine in the attempts to make the coupling were given by Stoddard, the foreman of the Terminal Railroad Association's switching crew; that none of respondent's employees saw appellant at the time in question, nor did any of them give appellant any orders with reference to the work in question.

The suit was dismissed as to the Chicago & Alton Railroad Company and, at the close of plaintiff's evidence, the court gave to the jury an instruction in the nature of a demurrer to the evidence. Plaintiff took an involuntary nonsuit, with leave to move the court to set the same aside, and judgment was afterwards entered for respondent. Plaintiff, in due time, filed his motion to set aside the nonsuit and for a new trial. The above motions were overruled and the cause duly appealed by him to this court.

I. Appellant contends that the trial court committed reversible error in sustaining defendant's demurrer to the evidence at the conclusion of plaintiff's case. In order to pass upon this question intelligently, we have set out a full statement of the pleadings and evidence in the case.

**Demurrer to Evidence.**

The plaintiff bases his right of recovery upon certain provisions of the Safety Appliance Acts passed by Congress. Section two of the Congressional Act of March 2, 1893 (Chap. 196, 27 Statutes at Large, 531), as amended by the Act of March 2, 1903 (Chap. 976, 32 Statutes at Large), reads as follows:

"Sec. 2. That on and after the first day of January, eighteen hundred and ninety-eight, it shall be unlawful for any such common carrier to haul or permit to be hauled or used on its line any car used in moving interstate traffic not equipped with couplers coupling automatically by impact, and which can be uncoupled without the necessity of men going between the ends of the cars."

Section 1 of the Act of March 2, 1903, provides that the requirements of Section 2, above quoted, shall be held to apply to common carriers by railroads, and that said requirements relating to automatic couplers shall be held to apply to all trains and cars used on any railroad engaged in interstate commerce.

Mr. W. W. Thornton of the Indianapolis Bar, in the Second Edition of his able treatise on The Federal Employers' Liability and Safety Appliance Acts, in Section 148, at pages 232 and following, in discussing the object of said statutes, said:

"It is clear that the intention of Congress in the passage of the Safety Appliance Act was to, in a measure, secure the safety of employees of railroads in moving cars in interstate commerce. 'Obviously the purpose of this statute is the protection of the lives and limbs of men, and such statutes, when the words fairly permit, are so construed as to prevent the mischief and advance the remedy.' 'The obvious purpose of the Legislature was to supplant the qualified duty of the common law with the absolute duty deemed by it more just.' 'The law was intended to protect the lives and safety of all employees, whether they are reasonably prudent or not.' 'The Safety Appliance Act is a remedial statute, and must be so construed as to accomplish the intent of Congress. Its provisions "should not be taken in a narrow sense." Nor should its undoubted humanitarian purpose be frittered away by judicial construction.' "

A large number of Federal authorities are cited by the author, which fully sustain his construction of the above acts.

In considering the demurrer to the evidence in this case, we should keep in mind that the jury had the legal right to weigh the evidence, and to draw therefrom every reasonable inference from the proven facts which a fair-minded jury of reasonable intelligence might draw, in considering the merits of the case. In the light of foregoing, if plaintiff produced *substantial* evidence at the

trial which, taken as true, warranted a recovery in his behalf, then he was entitled to go to the jury on the merits of his case, and the court committed error in nonsuiting him.

II.    The undisputed evidence discloses that plaintiff, The Terminal Railroad Company and respondent were engaged in interstate commerce at the time of plaintiff's injury.   It is likewise undisputed that plaintiff was in the service of defendant at that time as a car inspector.   He testified that it was his duty to go in and help couple the cars and get the train ready to depart; that three impacts were made to couple the refrigerator cars to the mail car of defendant at the end of the train, without success, and that he went in as a part of his duty to ascertain what was the matter with the coupling apparatus on defendant's mail car, and while performing this duty the cars came back and caught his hand.   The train, including the mail car aforesaid, belonged to defendant.   The crew of the latter were present to take charge of the train when it started for East St. Louis, and did so although it was hauled by the Terminal engine and Terminal crew to East St. Louis, the western terminus of defendant's road.   The respondent sold tickets for passage on said train to points outside of Missouri, and was carrying interstate freight thereon.   This mail car, with the coupler that failed to perform its proper function after three impacts, was a part of defendant's train; and the refrigerator cars attempted to be attached to said mail car were to become a part of said interstate train.   If defendant had been hauling this train over its *own* road at the time and place of accident, it is *clear* from the evidence that plaintiff would have been entitled to go to the jury under the Safety Appliance Acts aforesaid, regardless of his alleged assumption of risk and contributory negligence.

*(margin note: Question for Jury.)*

III. If plaintiff, by his testimony, brought himself within the provisions of the Safety Appliance Act aforesaid, he would not be precluded from recovery by reason of his alleged assumption of risks or contributory negligence.

**Proximate Cause.**

Section 8 of the Safety Appliance Act, approved March 2, 1893 (27 Statutes at Large, 531, Chap. 196) provides: "That any employee of any such common carrier who may be injured by any locomotive, car, or train in use contrary to the provision of this act shall not be deemed thereby to have assumed the risk thereby occasioned, although continuing in the employment of such carrier after the unlawful use of such locomotive, car, or train had been brought to his knowledge."

It is contended, however, by respondent, that its alleged negligence was not the proximate cause of plaintiff's own negligent acts. We have carefully examined the authorities cited by respondent in support of this contention, and find that in each of said cases the facts were entirely different from those at bar. For instance, in the case of Great Northern Ry. Co. v. Wiles, 240 U. S. 444, plaintiff's intestate was a brakeman on a railroad train. In the operation of the train, a drawbar of one of the cars pulled out, and the train parted. The rules of the company under such circumstances required the brakeman to retire and place a signal to warn approaching trains. He failed to comply with this requirement, and another train crashed into the stalled cars, and killed plaintiff's intestate. No defect was shown in the drawbar and plaintiff relied on the doctrine of *res ipsa loquitur*, etc. The court held, where the Safety Appliance Act was not involved, the deceased's act in failing to flag the approaching train should be considered as the proximate cause of his death.

Turning to plaintiff's evidence in this case heretofore set out, it shows that he was strictly performing his duty. If he was guilty of contributory negligence in failing to notify the foreman of the crew that he was go-

ing between the cars to find out what was wrong with the coupler of the mail car, it would not preclude a recovery in this case, nor would it be a defense in an action of this character based upon the Safety Appliance Act. [Sec. 3, Employers' Act 1908, 35 U. S. Statutes at Large, 65, chap. 149; Texas & Pac. Ry. Co. v. Rigsby, 241 U. S. 33-43; Delk v. St. Louis & San Francisco Ry. Co., 220 U. S. 580; Great N. Ry. Co. v. Otos, 239 U. S. 349-351; St. L., I. M. & So. Ry. Co. v. Taylor, 210 U. S. 281-294; Johnson v. So. Pac. Co., 196 U. S. 1.] On the other hand, it was not necessary for plaintiff to have gone between the cars while performing his duty, *had it not been for the failure of the coupler on defendant's mail car to properly function.* We are of the opinion that it was a jury question as to whether the act of defendant in undertaking to transport in an interstate commerce train, a car with a defective or unworkable coupler, was the proximate cause of plaintiff's injuries. [Chicago, M. & St. P. Ry. Co. v. Voelker, 129 Fed. 522; Donegan v. Ry. Co., 165 Fed. 869; C. J. Ry. Co. v. King, 169 Fed. 372; Payne v. Colvin, 276 Fed. 15; Tenn. Ry. Co. v. Drake, 276 Fed. 393; McAdoo v. McCoy, 215 S. W. 870; So. Pac. Co. v. Thomas, 188 Pac. 268; Alabama & V. Ry. Co. v. Dennis, 91 So. 4; Noel v. Ry. Co,, 182 S. W. 787; Ry. Co. v. Campbell, 241 U. S. 497.]

IV.  It is contended by respondent that the evidence adduced at the trial was insufficient to show that plaintiff was injured on defendant's line as contemplated in the Federal statutes heretofore mentioned. The evidence clearly shows that the train in controversy, including the mail car with the unworkable coupler, belonged to defendant. The plaintiff was at the time of his injury, and prior thereto, a car inspector in the service of defendant. The latter was selling passenger tickets from St. Louis, Missouri, to points outside the State, and was

On Defendant's Line.

likewise receiving and transporting freight and express business in the same manner. Aside from the actual *movement* of the train in controversy by the engine and train crew of the Terminal road, it was operated by its own conductor, porter and brakeman, as it would have been had the respondent owned the road from St. Louis, Missouri, to its western terminus at East St. Louis. In the absence of evidence on the subject, it should be assumed that the Terminal Company, in making up the defendant's interstate train, and transporting the same to East St. Louis over the Terminal road, with the engines and crew of the latter, was acting under some running arrangement with the defendant, or under an express or implied agreement between said railway companies. It was necessary that defendant in carrying on its interstate business between St. Louis, Missouri, and points outside the State, should do so though the agency of some other carrier, as it had no line of its own from St. Louis, Missouri, to the western terminus of its road. As the defendant and Terminal Company were acting in concert in making up defendant's train aforesaid, we are of the opinion, that the Terminal Company, in performing said service, was the agent of defendant at the time and place of accident, and that plaintiff brought his case within the purview of the Federal statutes heretofore mentioned, by substantial testimony which entitled him to go to the jury. [Sec. 2 of Safety Appliance Act of March 2, 1893, 27 Statutes at Large, 531, chap. 196, as amended by Act of March 2, 1903, 32 Statutes at Large, 943; Gray v. L. & N. Railroad Co., 197 Fed. 874; Philadelphia & Ry. Co. v. United States, 191 Fed. 1, 111 C. C. A. 661.]

We are of the opinion that the principles of law announced in the two cases just cited apply with equal force to the facts in the present controversy.

V. After a very careful consideration of both the law and facts in this case, we have reached the conclusion that plaintiff produced substantial testimony at the

trial of the case which entitled him to go to the jury on the merits of the controversy.

The judgment below is accordingly reversed and the cause remanded, to be proceeded with in conformity to the views heretofore expressed. *Higbee, C.,* concurs in the result in a separate opinion.

PER CURIAM:—The foregoing opinion of RAILEY, C., is adopted as the opinion of the court. All of the judges concur.

Headnotes 1 to 4:   **Master and Servant:** 1, 26 Cyc. 1459;   2, 26 Cyc. 1463;   3, 26 Cyc. 1181, 1230, 1460;   4, 28 Cyc. 1086 (1926 Anno).