ILLINOIS STATE TRUST COMPANY, Administrator De Bonis Non of Estate of ARTHUR BARDMASS, v. MISSOURI PACIFIC RAILROAD COMPANY, Appellant.—5 S. W. (2d) 368.

Division Two, March. 24, 1928.

*James F. Green, Thomas J. Cole* and *Merritt U. Hayden* for appellant.

*Charles P. Noell* for respondent; *Glen Mohler* of counsel.

BLAIR, J.—Myrtle Bardmass, as administratrix of the estate of Arthur Bardmass, deceased, instituted this suit in the Circuit Court of the City of St. Louis, claiming damages for the death of said Arthur Bardmass. Upon trial she recovered judgment for $20,000 and defendant appealed. Upon suggestion in this court of the resignation of Myrtle Bardmass as administratrix and the appointment by the Probate Court of St. Clair County, Illinois, of the Illinois State Trust Company as administrator *de bonis non* of said estate, said administrator was substituted as party respondent.

Myrtle Bardmass was the wife of Arthur Bardmass, who, while employed as a switchman by appellant, was killed on October 8, 1923, by the collision of two freight cars in the yards of appellant at Dupo, Illinois. A posthumous child of deceased was born to Myrtle Bardmass, subsequent to the filing of the petition, in which said child was referred to as an unborn child.

The action was brought under the Federal Employers' Liability Act and the sole ground of negligence alleged in the petition is that appellant used in interstate commerce on its railroad line cars which

were "not equipped with couplers coupling automatically by impact and which could be coupled without the necessity of men going between the ends of the cars, in violation of the laws of the United States and of the Safety Appliance Act of March 2, 1893, 27 Statutes at Large 531, Chapter 196, as amended by Act of March 2, 1903, 32 Statutes at Large 943, Chapter 976, so that at the time the said Arthur Bardmass received the above-mentioned mortal injuries it was necessary for the said Bardmass, in the exercise of his ordinary duties as a switchman in attempting to and in order to couple the said cars, to go between the ends of same for the purpose of coupling them, and while he was in between the ends of the said cars attempting to insert a certain lug, which was missing from the coupler of one of the cars, and while he was preparing said coupler in the performance of his duty to effect a coupling, one of said cars moved against the said Arthur Bardmass, now deceased, catching him between the two drawbars and crushing and killing him instantly."

In the view we take of the case it is unnecessary to make an extended statement of the facts. For the purposes of this opinion, but without so deciding, we will assume the controverted facts that both deceased and appellant were engaged in interstate commerce at the time the deceased was killed and that the facts make the Federal Safety Appliance Act applicable to this case, if the violation of said act be deemed the proximate cause of the death of Bardmass.

Myrtle Bardmass was the lawful wife of deceased and the posthumous child is his child. He was twenty-four years of age at the time of his death. He was then earning $200 per month and was living with and supporting his wife. He was foreman of a switching crew in the Dupo yards. On the night of October 8, 1923, Bardmass and his crew undertook to move a string of freight cars standing on track 11. The engine was coupled to the south car of the string. When the engine moved backward only one car moved with it. The engine and this car moved away about one and one-half car-lengths before the engine was stopped on signal from Bardmass. He then examined the coupler on the car at the south end of the string and discovered that a lug was missing and that its absence permitted the couplers to separate. As the engine was needing water, Bardmass directed the engineer to "cut off and go get water." One of the switchmen was sent to his supper at the same time.

It appears that the engine had moved the car attached to it a little farther away from the string before the engineer received the order to "cut off." It was stopped about two and a half car-lengths of the south end of the remaining string of cars. It does not appear whether or not the brakes on this car were set. So far as the record

discloses, the track at that point was on level ground. There is no testimony showing any reason why this car should move, even if the brakes had not been set.

After the engine started to get water, Bardmass procured a lug and undertook to insert it in the defective coupler. In doing so he took a position between the rails in front of the coupler. While he was so engaged the car, which had been uncoupled from the engine and left standing just to the south, moved silently and unobserved to the north until it collided with the south car of the string. The cause of its movement is not disclosed by the evidence. There is positive testimony that it was not moving immediately after the engine was uncoupled from it. Bardmass was caught between the two cars. His head was crushed by the impact of the couplers and he died instantly.

We have not set out the evidence at any length and have only stated such facts as have a bearing upon the issue which we deem decisive of this case. Bardmass was not killed in a coupling or uncoupling movement nor as the result of such movement. We are satisfied that the alleged violation of the safety Appliance Act was not the proximate cause of his death, even assuming that the evidence made a case under the Federal Employers' Liability Act. The proximate cause of his death was the unexpected and unexplained movement of the freight car which collided with the other cars. The cause of such collision was not the violation of the act. Its violation was merely one of the conditions which brought about the situation making the accident possible. As the violation of the act was the only ground of negligence alleged in the petition, we need not consider whether appellant might be liable in damages for the death of Bardmass on any other theory of negligence.

It is scarcely necessary to say that decisions of the Federal courts, particularly of the United States Supreme Court, are controlling upon this court in cases based upon alleged violations of Federal statutes. We think the controlling decisions of such courts settle the question of proximate cause in the case at bar adversely to respondent's contention. Counsel on both sides have ably and exhaustively briefed this and other points in the case and have cited and discussed all of the applicable decisions. The leading case is St. Louis & San Francisco Railroad Co. v. Conarty, 238 U. S. 243, which was decided in the year 1915. Conarty was killed while riding on the footboard of a switch engine which collided with a freight car standing on a siding. The car on the siding had no coupler or drawbar. But for their absence, Conarty probably would not have been killed, because the engine and car could not otherwise have come together close enough to have crushed him. The engine was not engaged in coupling on to the car at the time. It was an unexpected collision

caused by the failure of the engineer to make timely discovery of the presence and proximity of the defective car. The sole ground of negligence was the alleged violation of the Federal Safety Appliance Act in using a freight car not having a proper coupler. The court said:

"It is not claimed, nor could it be under the evidence, that the collision was proximately attributable to a violation of those provisions, but only that had they been complied with it would not have resulted in injury to the deceased. . . . It is very plain that the evils against which these provisions are directed are those which attended the old-fashioned link and pin couplings where it was necessary for men to go between the ends of the cars to couple and uncouple them, and where the cars when coupled into a train sometimes separated by reason of the insecurity of the coupling. . . . We are of opinion that the deceased, who was not endeavoring to couple or uncouple the car or to handle it in any way, but was riding on the colliding engine, was not in a situation where the absence of the prescribed coupler and drawbar operated as a breach of a duty imposed for his benefit, and that the Supreme Court of the State erred in concluding that the Safety Appliance Act required it to hold otherwise."

Louisville & Nashville Railroad Co. v. Layton, 243 U. S. 617, is a case well illustrating the circumstances under which violation of the Safety Appliance Act may be the proximate cause of injuries sustained by employees engaged in acts other than that of effecting a coupling at the time of injury. We cannot do better than to quote a paragraph of the opinion for the facts:

"A train of many cars standing on a switch was separated by about two car-lengths from five cars on the same track loaded with coal. An engine, pushing a stock car ahead of it, came into the switch, and failed in an attempt to couple to the five cars, but struck them with such force that, although the engine with the car attached stopped within half a car-length, the five loaded cars were driven over the two intervening car-lengths and struck so violently against the standing train that the plaintiff, who was on one of the five cars for the purpose of releasing the brakes, was thrown to the track, with the result that his right arm was crushed by the wheels and was amputated below the elbow."

There the impact of the cars in an unsuccessful endeavor to make the coupling started the cars moving and permitted them to bump into the string of cars where Layton was at work. The failure of the coupling "to make" permitted the cars to move and was the proximate cause of Layton's injury. In the case at bar the defective coupling had nothing in the world to do with the movement of the car which collided with the one upon which Bardmass was working.

In Lang v. New York Central Railroad Co., 255 U. S. 455, the facts were that a freight car, without drawbar or coupler, was left standing on a sidetrack. Lang was a brakeman and was riding on one car of a string of two or three freight cars kicked upon the same sidetrack. For some reason Lang failed to get the cars he was riding stopped in time and they collided with the defective car standing on the track. On account of the absence of the coupler and drawbar, the two cars came so closely together in the collision that Lang's leg was crushed and he died from his injuries. Seven of the justices concurred in the opinion of Mr. Justice McKenna, holding that the absence of the coupler and drawbar was not the proximate cause of Lang's death. The majority opinion held that the New York Court of Appeals correctly construed the Conarty case as holding that "the requirement of the Safety Appliance Act 'was intended to provide against the risk of coupling' cars."

Neither in the Lang case nor in the Conarty case was the movement of the cars, which caused the collision, part of a coupling operation and in neither was "the movement of the colliding car directed to a movement of the defective car."

In Minneapolis & St. Louis Railroad Co. v. Gotschall, 244 U. S. 66, deceased, a brakeman, was walking along the tops of the cars of a moving train when a coupler opened. The air brakes were suddenly set and deceased was thrown under the wheels by the ensuing jerk and was killed. While deceased was not engaged in a coupling movement and was not killed by a movement of the train in making a coupling, the cause of the sudden jerk, which threw him off and killed him, was a defective coupler. The defective coupler was not a mere condition of the fatal accident, as in the case at bar, but was the proximate cause.

In Philadelphia & Reading Railway Co. v. Eisenhart, 280 Fed. 271 (C. C. A. 3rd Cir.), Eisenhart was a conductor riding one of two cars in order to stop them at the proper place. Before he stopped these cars the train parted because of a defective coupler and other cars broke away and, unattended, followed the cars Eisenhart was riding and collided with them, causing the injuries sued for. The defective coupler was held to be the proximate cause of the injuries, because the collision was due to the defective coupler.

In this case we find a valuable summing up of the rule governing such cases, laid down by the United States Supreme Court in the Conarty, Layton, Lang and Gotschall cases, as follows:

"We cannot agree with the plaintiff in error in its contention that the Supreme Court in the Lang Case construed the Safety Appliance Act as restricting the liability of carriers to equipping cars with couplers of the standard required and as limiting its protection to employees in the act of or at the place of coupling and uncoupling

cars. Whatever difference there may be in the opinions, the three cases cited, as also the Gotschall case inferentially, were tried and decided on the principle of causal relation between the fact of delinquency and the fact of injury, that is, they were, with entire consistency, tried on the question whether on the facts of each case the carrier's failure to obey the statute was or was not the proximate cause of injury to the employee, without regard to the place and character of his work. This is the test of liability.''

In Davis v. Wolfe, 263 U. S. 1. c. 243, which is a case cited and relied upon by both sides in the case at bar, the rule is quite similarly, but more fully stated as follows:

''The rule clearly deducible from these four cases is that, on the one hand, an employee cannot recover under the Safety Appliance Act if the failure to comply with its requirements is not a proximate cause of the accident which results in his injury, but merely creates an incidental condition or situation in which the accident, otherwise caused, results in such injury; and, on the other hand, he can recover if the failure to comply with the requirements of the act is a proximate cause of the accident, resulting in injury to him which in the discharge of his duty, although not engaged in an operation in which the safety appliances are specifically designed to furnish him protection.''

In McCalmont v. Pennsylvania Railroad Co., 283 Fed. 736 (C. C. A. 6th Cir.), McCalmont was foreman of car inspectors. The coupler on a freight car had been found defective and the car was switched upon a siding with other cars needing repairs preparatory to being taken to the shops. The particular car had been chained to the car next to it. McCalmont discovered that the chain had too much slack and he and his helper went between the cars to take up the slack. While he was so engaged a third car was kicked on to the same siding and struck the cars between which McCalmont was working. He was caught between the cars and was killed. It was held that the defective coupler was not the proximate cause of McCalmont's death. The applicable circuit court decisions were reviewed and the reasoning in the Eisenhart case was approved.

The McCalmont case is so much like the case at bar that we regard it as controlling, especially as we agree with the analysis in that case of the controlling Federal court decisions on the subject. As in McCalmont's case, Bardmass would not have been between the cars but for the defective coupling. Nevertheless such defect had nothing to do with causing the collision between the two cars. That collision was due to causes set in motion by some act or omission entirely apart from any negligence of the appellant in using a car with a defective coupler.

The ruling of this Division in Rittenhouse v. St. Louis-San Francisco Railway Co., 299 Mo. 199, 252 S. W. 945, seems to rule this case. Rittenhouse was a car inspector who went between two cars to repair a defective coupler. None of the switching crew knew of his presence between the cars. A third car was kicked on to the same track and was permitted to collide with the cars where Rittenhouse was working and he received injuries which resulted in his death. The movement of kicking the car on to the siding was not for the purpose of making a coupling. The defective coupler was not the cause of the collision. It was therefore held that Rittenhouse did not come within the protection of the Safety Appliance Act.

The cases relied upon by respondent are either distinguishable from the case at bar on their facts, or, if in point on the facts, with one exception to be noticed later, were decided prior to the Conarty and other cases by the United States Supreme Court. In Chicago Great Western Railroad Co. v. Schendel, 267 U. S. 287, Ring, a foreman, was killed by a chain used in place of a defective coupler when he went in between the cars to detach the defective car from the rest of the train. He was engaged in the act of uncoupling cars not protected by a statutory coupler. His death was proximately due to the failure of the railroad to provide a proper coupler.

In Callihan's Admr. v. Chesapeake & Ohio Railway Co., 263 S. W. (Ky.) 339, the direct cause of the collision was the absence of a headlight. Had there been a headlight complying with the requirements of the Boiler Inspection Act, the presence of the cars standing upon the track would have been timely discovered and the collision avoided.

In York v. St. Louis, Iron Mountain & Southern Railway Co., 110 S. W. (Ark.) 803, York was compelled to go between cars in the act of uncoupling them because the coupler was defective. His foot caught in an unblocked frog and he was run over and killed. The violation of the act was clearly the proximate cause of York's death.

In Hood v. Baltimore & Ohio Railroad Co., 302 Mo. 609, 259 S. W. 471, three attempts to make a coupling by impact had failed and Hood went between the cars to examine the coupling of the mail car and, while he was in that position, a fourth attempt to couple by impact was made and he was injured. In that case the defective condition of the coupler, if it was defective, was the proximate cause of the accident. He was injured in a coupling movement.

In Minneapolis etc. Railway Co. v. Goneau, 269 U. S. 406, Goneau was a rear brakeman. The train broke in two. He was attempting to adjust the coupler to recouple the parted sections. He partially succeeded. The train started, only to break in two again. Goneau tried to move the carrier iron into position and this stuck fast. He then applied all his power to it and it moved much more easily than he expected. For that reason he fell off the bridge, where the de-

fective car had stopped, and was injured in the fall. That case is distinguishable from the case at bar by the fact that Goneau was merely adjusting the coupler and not repairing it and because the use of the defective coupler as a coupler had not ended. In the case at bar such use had ended and the engine had been sent away.

Mr. Justice SANFORD noted the contention of the railroad company, among others, ''that the defective condition of the carrier iron was merely a condition presenting the occasion for making the repairs, and not a proximate cause of the accident.'' He said:

''Nor can it be said that Goneau was engaged in doing repair work. He was not a repair man, but a brakeman, and was not repairing the carrier iron, but attempting to move it into place to support the coupler, so that the coupling could be made and the train proceed. In short, he was engaged in the work of coupling the cars, that is, as was said by the Supreme Court of Minnesota, 'in a coupling operation.' Where, on the failure of cars to couple by impact, a switch-man goes between them for the purpose of adjusting the knuckle of a coupler so that it will make a coupling, and is injured by the fall of the knuckle, due to a broken lip, he is not engaged in repair work, but in coupling, and is within the protection of the Safety Appliance Act. [Baltimore Railroad v. Tittle, supra, 820.] And although Goneau, in testifying, stated that when he found the coupler in such a condition that he could not couple up the train unless he fixed it, it became his duty to 'repair it and get the train going,' his use of the word 'repair,' upon which the Railway Company lays great stress, does not change the situation in the eyes of the law or transform the coupling operation into repair work.

''Since he was injured as a result of the defect in the coupler, while attempting to adjust it for the purpose of making an immediate coupling, the defective coupler was clearly a proximate cause of the accident as distinguished from a condition creating the situation in which it occurred.''

Without discussing or referring to the Conarty, Lang, Layton or Gotschall cases, supra, the court recognized the rule announced in those cases that the defective coupler must be the proximate cause of the injury and not merely the condition which created the situation under which the accident occurred.

In Philadelphia & Reading Railway Co. v. Auchenbach, 16 Fed. (2d) 550 (which was decided by the Circuit Court of Appeals for the Third Circuit, and wherein the Federal Supreme Court subsequently denied *certiorari*), plaintiff went between cars after a coupling had been partially but unsatisfactorily made. While still engaged in working to perfect the coupling, the engineer, mistaking a signal of another train crew for one of his own crew, unexpectedly moved the train and injured plaintiff. He had gone between the cars to adjust

the defective coupling, during the course of and completing a coupling movement. The violation of the act was properly held to be the proximate cause of the injury.

In Chicago, Rock Island & Pacific Railway Co. v. Brown, 229 U. S. 317, Brown was a brakeman engaged in uncoupling cars in motion. Owing to a defective appliance on the side of the car, he had to go between the cars to uncouple them. He reached across to the appliance on the other side of the coupler. He slipped and his foot was caught in an unblocked guard rail and his leg was cut off. Violation of the act was properly held to be the proximate cause of the accident.

We have already referred to Davis v. Wolfe, 263 U. S. 239, which affirmed Wolfe v. Payne, 294 Mo. 170, 241 S. W. 915. There Wolfe was injured by falling from a freight car by reason of a defective grab-arm, in that he was thrown off by a sudden lurch of the train. The defective grab-iron was thus properly held to be the proximate cause of his injury. It was held that Wolfe was within the protection of the act, although not engaged in coupling or uncoupling cars at the time of his injury. We think the case is in full accord with the Conarty, Lang and other cases by the Supreme Court, as appears by the excerpt therefrom which we have already quoted.

In Voelker v. Chicago, Milwaukee & St. Paul Railroad Co., 116 Fed. 867, Voelker was a brakeman. He went between the cars to adjust the coupler so that the coupling might be made. He was injured in the subsequent movement of the train. The case is thus readily distinguishable on its facts from the case at bar.

The foregoing cases, cited and relied upon by respondent, are all distinguishable on their facts from the case at bar. The other cases cited which are not so readily distinguishable on their facts, except one case, were decided before the controlling rule was announced by the Supreme Court in the Conarty and subsequent cases. The single exception noted is Clark v. Erie Railroad Co., 230 Fed. 478. This was an opinion written by the trial judge upon motion to set aside the verdict. We would not notice it to any extent, except that it seems to be out of harmony with the Conarty case and the facts are quite like those in the case at bar. Clark was a member of a switching crew. The automatic coupler on the switch engine was defective and failed to make the coupling when an attempt was made to move some cars. The engine was backed up a few feet and Clark went between it and the cars to examine the coupler. The string of cars, either on account of the slope of the track or for some reason other than a coupling operation, moved toward the engine and, in the darkness, Clark did not see them approaching and was caught and injured. The trial judge held that the violation of the Safety Appliance Act was the proximate cause of the injury. He relied

on Grand Trunk Railway Co. v. Lindsay, 233 U. S. 42, where the movement of the cars was made by the engineer for the purpose of effecting a coupling.

The Clark case was decided in 1916. The Conarty case was decided in 1915. But the rule there announced seems not to have been made entirely clear until the Lang case and subsequent cases were decided. The trial judge's opinion in the Clark case, as we understand it, is in conflict with the Conarty and subsequent cases of the Supreme Court and the several Circuit Courts of Appeals. It is the only case written subsequent to the Conarty case, which we have been unable to distinguish on its facts from the case at bar. Of course, the Clark case is not controlling or authoritative in view of the prior and subsequent decisions of the superior Federal courts, which we have discussed.

The facts in Erie Railroad Company v. Russell, 183 Fed. 722 (C. C. A. 2d Cir.), were quite similar to those in the case at bar, but the case was decided before the United States Supreme Court decided the Conarty and other cases. The Russell case was ruled on other cases, with which the majority of the judges concurring therein announced themselves as being in disagreement on first impression. One of the cases ruling the Russell case was Chicago Junction Railway Company v. King, 169 Fed. 372 (C. C. A. 7th Cir.), cited by respondent. The facts there are somewhat similar to those in the case at bar, but the decision was rendered in 1909 and is not authoritative in view of the later Supreme Court decisions.

We have probably extended this opinion unnecessarily in considering the cases bearing upon the question of proximate cause. The sole ground of negligence alleged in the petition is the violation of the Safety Appliance Act. In view of our conclusion that the alleged violation of that act was not the proximate cause of the death of respondent's decedent, a consideration of other errors assigned by appellant becomes unnecessary.

No case was made under the allegations of the petition. The judgment is reversed and the cause remanded. All concur.