HARRY L. MARTIN v. ST. LOUIS-SAN FRANCISCO RAILWAY COMPANY, Appellant.—19 S. W. (2d) 470.

Division One, July 30, 1929.

*E. T. Miller, A. P. Stewart* and *C. H. Skinker, Jr.,* for appellant.

452

*Douglass & Inman* for respondent.

RAGLAND, J.—This is an action for damages for personal injury sustained by plaintiff while employed by defendant as a locomotive engineer on one of defendant's interstate freight trains running between Amory, Mississippi, and Memphis, Tennessee. A violation of the Federal Safety Appliance Act and common-law negligence are both invoked as grounds for recovery.

The casualty giving rise to this controversy occurred about seven o'clock in the morning of March 5, 1925, at Waites, Mississippi. The freight train in question was being drawn by two locomotives, or was in common parlance a double-header, and plaintiff was the engineer on the second locomotive. The freight train had taken siding at Waites to allow a passenger train to pass it, and after the passenger train had passed, and while the freight train was pulling out of the

siding onto the main line, the coupling between the front locomotive and the second locomotive broke, causing the two engines to separate and the air hose connecting them to be pulled apart, thereby causing both engines· and the train to stop. The broken coupling on plaintiff's engine was hanging ·down on the pilot in such condition that it was hazardous to proceed without first removing the broken parts. The engines stopped some three or four feet apart and plaintiff went in between them for the purpose of . removing the broken parts, and while so engaged plaintiff's engine and the train of cars thereto attached moved or rolled down upon him, catching him between the pilot of his engine and the tender of the head engine, and causing the injuries for which he sues.

The entire train, consisting of two engines, thirty freight cars and a caboose, was as a unit controlled by an automatic air-brake equipment. Without attempting a technical description of this equipment, it may be said in a general way that it consisted of a brake pipe extending from the engine all the way back through the train; an air pump, or pumps, on the engine; and valves for reducing the air pressure in the pipe. The brake pipes of the several cars were connected by means of rubber hose: there was an angle cock on the end of the brake pipe of each car and the hose screwed into the angle cock: the hose between the cars was connected by means of a knuckle joint. The brakes of all cars were coupled to the main brake pipe and their application was controlled through the air pressure in that pipe. A requisite amount of air pressure released the brakes: a reduction of that .caused the brakes to take hold. On each engine there was a ''double-heading cock.'' When a train is being pulled by two engines it is the universal practice, and the rules of defendant required, that the double-heading cock on the second engine be cut out, that is, that the air pump on that engine be taken out of the operation. This in order that the automatic air brakes may be under the control of the engineer of the lead engine without interference on the part of the. engineer of the second. In addition to the automatic air brakes which controlled the train as a whole, each of the engines of the train in question was equipped with an independent air brake. All of the brakes, so far ·as the evidence discloses, were in perfect operative condition.

The crew in charge of the train consisted of seven men. At the time the coupling between the engines broke, Patrick, Barnes and Estes—engineer, fireman and brakeman respectively—were in the cab of the head engine; plaintiff and his fireman, Perkins, were on the second engine; Gravely, the conductor, was also on that engine; and Baker, the rear brakeman, was either in the caboose or on the ground near, he having just lined the switch after the train had passed from the siding to the main line. When the coupling broke,

the hose pulled apart at the knuckle joint; thereupon, the train, including both engines, came to a stop through the operation of the automatic air brakes, the engines as they came to rest being three or four feet apart. There was a slight down grade in the direction toward which the train was headed at the place where it came to a stop.

As soon as the train stopped Patrick immediately set the independent air brake on his engine, climbed down and walked back to the rear of the tender. Estes also got down and walked back: he at once closed both angle cocks—one at each end of the hose connection between the brake pipe under the tender of the first engine and the brake pipe under the second engine. Shortly afterward plaintiff got off his engine and came forward. After viewing the situation he concluded that there was but one thing to do and that was to remove the broken parts of the coupling which were hanging down over the slats of the pilot. Thereupon he walked into the open space between the two engines and began the work of removing the coupling which was still attached in part to the pilot beam of his engine. While so engaged, and after the elapse of some three or four minutes from the time he commenced the undertaking, the train suddenly rolled forward inflicting the injuries of which he complains.

All of the witnesses, including the air brake experts and the plaintiff himself, agreed that the train, under the circumstances which have been described, would not have moved forward unless the angle cock at the front of the engine was closed, the double-heading cock cut in and the independent air brake of the engine released: that the train would not have moved unless all three of these conditions concurred. Plaintiff testified that before he left his engine he set the independent air brake, and that the double-heading cock was cut out just as it had been during the entire trip. After plaintiff got down, Gravely, the conductor, and Perkins, the fireman, remained on the engine until after the accident. Each testified that he did not release the independent air brake or cut in the double-heading cock, and that he did not see the other do so. There was no one else on or about the engine in a position to do either of these things. Yet, after plaintiff had been gotten out from between the tender of one engine and the pilot of the other, Patrick climbed upon plaintiff's engine and found the double-heading cock cut in and the independent engine air brake not set.

The petition contained seven assignments of negligence, but at plaintiff's instance the cause was submitted on but two. These were as follows: (1) "Defendant failed to have the coupler plate that broke loose from the beam as aforesaid safely and securely fastened to the beam of plaintiff's engine;" (2) "an employee of this train crew, whose name is unknown to plaintiff, negligently cut the air in

on plaintiff's engine while plaintiff was between the engines.'' The answer consisted of a general denial and pleas of contributory negligence and assumption of risk.

The jury found the issues for plaintiff and assessed his damages at $30,000. Defendant's appeal brings the case here for review.

Appellant's principal contention is that the trial court should have sustained defendant's demurrer to the evidence at the close of the case. Its insistence goes to both of the grounds of recovery on which the cause was submitted. We will therefore consider the refusal of the demurrer with respect to each, and first as to the violation of the Safety Appliance Act.

I. It may be conceded that the evidence discloses a violation of  the Safety Appliance Act on the part of the defendant: the engines were cars within the meaning of the act; they were in use on defendant's line in moving interstate traffic; and the couplers (at least after one gave way) would not couple automatically by impact. Notwithstanding, such violation must have proximately caused or contributed to cause plaintiff's injury; otherwise, no liability flows from it.

Neither the plaintiff nor any of the crew was engaged in a coupling or uncoupling movement; they were removing a broken coupling, the use of which as a coupling had come to an end; plaintiff had no other purpose in going between the engines. The broken coupling merely furnished the occasion for plaintiff's being between the engines; it did not cause or contribute to cause the train to roll forward. The movement of the train was caused solely by the conditions which obtained with respect to the brakes: if the independent air brake on the second engine had been set, or if the double-heading cock on that engine had been cut out, the train would not have moved. There was no causal connection whatever between those conditions and the broken coupling.

The facts of this case with respect to the question under consideration are very similar to those in Illinois State Trust Co. v. Railroad, 319 Mo. 608, 5 S. W. (2d) 368, recently decided by Division Number Two of this court. The views expressed in the preceding paragraph are in accord with the conclusions announced in that case by Blair, J., after an exhaustive review of decisions of the United States Supreme Court and Courts of Appeals. On the authority of that case and the cases which it cites and reviews, appellant's contention that the violation of the Safety Appliance Act was not a proximate cause of plaintiff's injury must be sustained. It follows that the submission of whether plaintiff's injuries were caused by defendant's failure to have the coupling plates safely and securely fastened to the beam

of the engine, under plaintiff's Instruction 1, was error which necessitates a reversal of the judgment.

II. Appellant bases its contention that its demurrer should have been sustained as to the assignment of common-law negligence on the ground that, under the evidence, it was "a matter of speculation and conjecture as to whether the movement of the said engine and train was due to acts or omissions of the defendant, for which defendant would be liable, or acts or omissions of plaintiff, for which defendant would not be liable." Plaintiff testified that before leaving his engine he set the independent air brake and that at the time he left the double-heading cock which controlled the automatic air brakes was cut out. If the facts were as he testified then either Gravely or Perkins released the independent air brake and cut in the double-heading cock: they testified that they did neither. Whether the facts were as narrated by plaintiff, or whether as testified by Gravely and Perkins, was not a matter of speculation and conjecture, but one to be found by the jury according to what they considered the greater weight of the credible evidence in the case. Appellant's contention under this head is disallowed.

Other errors complained of are of such a character that they will probably not recur on another trial, and for that reason will not be considered.

The judgment of the circuit court is reversed and the cause remanded. All concur.