CHARLES PLESS, Respondent, *v.* THE NEW YORK CENTRAL
RAILROAD COMPANY, Appellant.

Fourth Department, November 12, 1919.

Railroads — negligence — interstate commerce — violation of Federal
Safety Appliance Act — failure to provide automatic coupler —
direction of verdict for plaintiff — testimony not raising question
for jury — verdict not excessive.

Where a railroad company is guilty of a violation of the Federal Safety
Appliance Act by failing to equip its switching engine with an automatic
coupler which results in injury to an employee while endeavoring to
couple said engine to a car, it is deprived of the defense of assumed risk
and contributory negligence. Nor is the defendant entitled to have the
question of the plaintiff's contributory negligence left to the jury and,
the plaintiff's right to recovery being absolute, it was proper for the
court to direct a verdict in his favor.

The direction of a verdict was proper, although the engine failed to couple
with the car because the former was moving on a curved track, as the
plaintiff testified that couplings were in common use which would act
automatically upon slight curves, which evidence was not disputed.

As the plaintiff was forty-one years of age at the time of the injury and
was earning about $150 per month, a verdict of $15,000 cannot be held
to be excessive.

FOOTE, J., dissented.

APPEAL by the defendant, The New York Central Railroad
Company, from a judgment of the Supreme Court in favor
of the plaintiff, entered in the office of the clerk of the county
of Erie on the 7th day of May, 1919, upon the verdict of a
jury for $15,420, later reduced by the court to $15,000, and
also from an order entered in said clerk's office on the same
day, denying defendant's motion for a new trial made upon
the minutes.

*Locke, Babcock, Spratt & Hollister* [*Raymond C. Vaughan*
of counsel], for the appellant.

*Hamilton Ward* [*Dana L. Spring* of counsel], for the
respondent.

HUBBS, J.:

The plaintiff was a yard conductor, in the employ of the defendant, on the night of June 6, 1917. The plaintiff and the defendant at that time were engaged in interstate commerce.

In the performance of his duties plaintiff assisted in making up and switching trains. He worked, with the members of his crew, in cutting out cars.

The plaintiff's crew, by mistake, had placed a car on track No. 24 in the defendant's yard at Buffalo, N. Y., that should have been placed on track No. 22. The car so misplaced was the second car in from the west end of track No. 24. The first car in on track No. 24 was about half a car length west of the misplaced car, and it was foul of track No. 23. At about eleven o'clock at night on said 6th day of June, 1917, the plaintiff, with his crew, started to take such misplaced car off of track No. 24. To do that it was first necessary to couple the engine to the car just west of such misplaced car and to pull it out off of track No. 24. As the engine approached said car, the plaintiff and one of his brakemen were riding on the footboard on the front of the engine. The engine moved in on track No. 24 from the lead track, running with the front of the engine ahead. When the engine came into contact with the first car on track No. 24, the plaintiff was on the footboard. The coupling did not make when the engine and car came into contact and the car was jarred ahead about a foot and a half. The engine stopped and the plaintiff adjusted the coupling on the engine and opened up the knuckle. He then stepped off the footboard of the engine to adjust the coupler on the car which was shifted to one side. He intended to pull it over in a straight position so that the coupling would make. As he stood, facing the car with his back to the engine and his left hand on the coupler, pulling it over, the engine moved forward and caught his hand. The injury resulted in the loss of three fingers and practically destroyed the use of the hand. This action was brought to recover damages because of such injuries.

At the close of the evidence the trial court directed a verdict, for the plaintiff, leaving to the jury only the question of damages. The trial court held that the evidence, which was undisputed, showed a violation of the Federal Safety Appli-

ance Act, in that the defendant had not equipped its engine and car with an automatic coupler that would automatically couple on impact.

It is urged by the appellant that it was error for the trial court to direct a verdict in favor of the plaintiff under the facts in this case, stress being laid on the evidence that the car stood on a slight curve and the statement of the plaintiff as follows: " On account of being on a slight curve, the coupling did not make."

The appellant concedes that the evidence in the case made a question of fact for the jury, but it insists that it was error to direct a verdict for the plaintiff.

It is conceded that the case is controlled by Federal statutes; the Safety Appliance Act of March 2, 1893 (27 U. S. Stat. at Large, 531, 532, chap. 196, §§ 2, 8; U. S. Comp. Stat. 1916, §§ 8606, 8612), and the Employers' Liability Act of April 22, 1908 (35 U. S. Stat. at Large, 66, chap. 149, §§ 3, 4; U. S. Comp. Stat. 1916, §§ 8659, 8660).

If there was a violation of the Safety Appliance Act, then under the provisions of the statutes above cited, the defendant was deprived of the defense of assumed risk and contributory negligence. It is urged that the acts of the plaintiff were the proximate cause of his injury, or at least that that question should have been left to the jury. There is no force in such contention if the defendant violated the Safety Appliance Act.

At the close of the opinion in the case of *San Antonio Railway* v. *Wagner* (241 U. S. 476; 60 Law. Ed. 1110) the court said: " In various forms plaintiff in error raises the contention that it was plaintiff's improper management of the coupling operation that was the proximate cause of his injury. But any misconduct on his part was no more than contributory negligence, which as already shown, is by the Employers' Liability Act excluded from consideration in a case such as this." In that case the defendant had violated the Safety Appliance Act.

In the case at bar, if there was a violation of the Safety Appliance Act, the right of the plaintiff to recover was absolute. The court in the *Wagner Case* (*supra*) said: " It clearly is the legislative intent to treat a violation of the Safety Appliance Act as ' negligence ' — what is sometimes called negligence *per se.*"

The question is presented, therefore, whether proof of the mere fact that the engine and car, while on a slight curve, failed to couple on the first impact established, as a matter of law, a violation of the Safety Appliance Act, which provides, by section 2 thereof, that: " It shall be unlawful for any such common carrier to haul or permit to be hauled or used on its line any car used in moving interstate traffic not equipped with couplers coupling automatically by impact, and which can be uncoupled without the necessity of men going between the ends of the cars."

In the *Wagner Case* (*supra*) the court said: " We need not in this case determine, what was conceded in *Chicago, R. I. & Pac. Ry.* v. *Brown*, 229 U. S. 317, 320, that the failure of a coupler to work at any time sustains a charge that the act has been violated."

It is evident, therefore, that the question here presented had not at that time been passed upon by the United States Supreme Court, and it has not been passed upon since that time, although the question was touched in the case of *Atlantic City Railroad Company* v. *Parker* (242 U. S. 56; 61 Law. Ed. 150). All that case holds, however, is that there was sufficient evidence in the case to justify the jury in finding that the defendant had violated the Safety Appliance Act.

It is said in the opinion, nevertheless, that: " No doubt there are arguments that the jury should have decided the other way. Some lateral play must be allowed to draw-heads, and further, the car was on a curve, which of course would tend to throw the coupler out of line. But the jury were warranted in finding that the curve was so slight as not to affect the case and in regarding the track as for this purpose a straight line. If couplers failed to couple automatically upon a straight track it at least may be said that a jury would be warranted in finding that a lateral play so great as to prevent coupling was not needed, and that, in the absence of any explanation believed by them, the failure indicated that the railroad had not fully complied with the law."

If the facts in the case at bar were the same as the facts in the *Wagner* case and in the *Parker* case, there would be great force in the argument of the appellant, that the question of whether or not it had been established that the defendant had

violated the Safety Appliance Act should have been sent to the jury for its decision as a question of fact.

In this case the plaintiff testified that there was, before the date of the accident, in common use upon cars on at least three railroads, the Great Northern, the Chicago, Burlington and Quincy, and the Soo lines, couplers which would always couple upon impact, and which did not need any adjustment. He described such couplers as lying in a carrier iron which is so suspended that the coupler is always at the center of the sill of the car, and will couple automatically upon impact, without any adjustment by employees, even upon slight curves. The testimony of the plaintiff upon that point was not disputed. It is urged by the respondent that such evidence distinguishes this case from the *Wagner* and *Parker* cases, and required the trial court to direct a verdict in favor of the plaintiff.

Bearing in mind the scope and purpose of the act as expressed in the act and the construction placed upon it by the courts in cases like *St. Louis & Iron Mountain Railway* v. *Taylor* (210 U. S. 281) it seems to me that the trial court was right in directing a verdict for the plaintiff.

Appellant complains, also, of the size of the verdict, which was for $15,000. I do not believe we would be justified in reducing the judgment. The plaintiff was forty-one years of age at the time of the injury and was receiving about $150 per month. The injury practically destroyed the use of his hand.

The judgment and order should be affirmed, with costs.

All concurred, except FOOTE, J., who dissented.

Judgment and order affirmed, with costs.