JOYCE ETHEL PETERS, Administratrix of Estate of JAMES CORNELIUS
PETERS, v. WABASH RAILWAY COMPANY, Appellant.—42 S. W.
(2d) 588.

Division Two, October 1, 1931.

*Homer Hall* and *Woodward & Evans* for appellant.

926

*Charles P. Noell, Charles L. Moore* and *Allen, Moser & Marsalek* for respondent.

928

COOLEY, C.—This suit was brought under the Federal Employers' Liability Act to recover for the death of plaintiff's decedent, James Cornelius Peters, who was killed on the night of December 1, 1925, while in defendant's employ as a switchman in defendant's freight yards in St. Louis. At the time of his death Peters was a member of a switching crew engaged in making up a "drag" of freight cars to be taken to another part of the city and put into a train. He was caught and crushed between one of the cars and an adjacent loading platform. Plaintiff obtained a judgment for $30,000, from which defendant appealed. The case comes to the writer on reassignment.

The petition charges one sole ground of negligence, viz., violation of the Federal statute commonly known as the Safety Appliance Act. [Act of March 2, 1893, 27 Statutes at Large, 531, chap. 196, as amended by Act of March 2, 1903, 32 Statutes at Large, 943, chap. 976; 45 U. S. C. A., sec. 2.] It alleges that defendant, in violation of the act, was using in interstate commerce cars not equipped with automatic couplers, coupling by impact, and that plaintiff's decedent was killed as the direct result of such violation while attempting to effect a coupling. No point is made on this appeal as to the peti-

tion, nor as to the sufficiency of the evidence to make a submissible case, so far as concerns the interstate character of defendant, and of the work at which Peters was employed when killed; nor is it contended that there was not a sufficient showing of the violation of the Safety Appliance Act charged. The only point urged by appellant, so far as concerns the question of liability, is that under the evidence it conclusively appears that the violation of said act was not the proximate cause of Peters' death. In the view we take of the case we need state only the facts bearing upon that issue.

The freight yard in which the accident occurred is immediately south of Carr Street. At the west side of the yard is the freight station, and immediately east of that building is track 6, upon which were the cars the movements of which are here involved. Track 6 extends in a general southerly direction from Carr Street, but curves to the southeast. Immediately east of and near track 6 is a narrow wooden loading platform about four or four and a half feet high, extending in the same direction along and curving with track 6. East of the platform are other tracks. The north end of the platform is about at the south side of Carr Street. The clearance between the side of a car on track 6 and the platform, except at and near the north end, is slight. At the point where Peters' body was found the middle of the car would approach to within about eight inches of the platform, and the clearance between the platform and the "door shoe" of the car was only about four and a half inches. Owing to the curve, however, there would be more space between car and platform at the ends of the car, evidently enough that Peters could stand and move therein, since he was caught by the middle of the car, the end of which had apparently passed him without injury. A witness testified that "at the ends of the cars all along the platform there is a fair clearance."

The crew of which Peters was a member consisted of himself, Michael Keating, foreman, and one McGrath, with Roy Bridegroom, engineer, and Carr, fireman, of the switch engine. At the time in question, about eleven P. M., they were, as above stated, making up a drag of freight cars, and had placed ten or eleven cars on track 6. These were coupled together, and the north end of the northernmost car, a Wabash car, was about five feet north of the north end of the loading platform. The engine, with four cars attached, backed down on track 6, in order to add two of the four to the string then on track 6. The engine was headed north with its tender and the four attached cars south of it. The southernmost of these four cars was a Kansas City Southern car, and the purpose was to effect a coupling between that car and the Wabash car above mentioned, then to push the string of cars far enough south so that the cars to be left would clear Carr Street, then to take away the two cars next

to the engine, leaving the remainder on track 6 while some further switching movements were made and another car or two procured to complete the drag.

Only two witnesses to the circumstances of the accident, Keating and Bridegroom, were called, both by plaintiff. Defendant offered no evidence, standing upon its demurrer. According to the testimony of these witnesses, Peters, who was styled "field man," had the duty of seeing that the coupling was effected between the Wabash car and the K. C. S. car, and he had charge of and directed the movement of the engine and cars attached thereto, the engineer obeying his directions. These directions were given by Peters by lantern signals received from him by Keating and by the latter relayed to the engineer who, from his position in the cab, could not see Peters. In the discharge of his duty Peters stationed himself at the north end of the Wabash car and gave a "back up" signal, which was relayed to and obeyed by the engineer. The coupling failed to "make" and Peters thereupon gave a stop signal, which was obeyed. The impact caused the string of cars not attached to the engine to move five to eight feet southward. Peters again went to the north end of the Wabash car and like signals were again given and obeyed. The coupling again failed to make. At this impact the string of cars not attached to the engine was moved ten to fifteen feet. [These distances were estimated, not measured.] After this second unsuccessful attempt the north end of the Wabash car was ten to eighteen feet south of the north end of the platform. Peters again went to the north end of the Wabash car, it being his duty, according to Keating, "to keep working at it" until he effected the coupling. He again gave the back-up signal, which was obeyed, and on this third attempt the coupling evidently "made." Immediately after the cars came together Peters, then on the ground at or between the ends of those two cars, gave a "kick" signal, which was relayed to the engineer, who then kicked or pushed the whole string of cars some fifty or sixty feet farther south. The engine and the two cars next to it were then uncoupled by Keating and taken away, and some ten minutes later Peters was found dead, crushed between the platform and the side of the K. C. S. car about midway of its length, his face toward and his right arm upon the platform and his lantern on the platform about a foot from his hand. The point at which his body was found was twenty-three steps, estimated at about thirty inches per step, [57½ feet] from the north end of the platform. There were indications on the boards of the platform that he had "slid along" or had been dragged along the platform eight or ten feet which would make the point where he was caught by the "door shoe" of the car which was against his back, about forty-seven feet south of the north end of the platform and some thirty feet or more

south of where he stood when he gave the kick signal, unless we assume, as suggested by respondent, that he was "jogged along" for some distance when the cars were "kicked in" before any marks showed on the platform,—which would be conjecture as there was no evidence to that effect. How he got to that point, if he did, before being caught does not appear.

Keating testified in answer to a question that he did not *know* whether or not the coupling "made" on the third attempt, but that it did make is, we think, the only possible conclusion to be drawn from plaintiff's evidence. Keating further testified that he was under the impression the coupling had made; that the kick signal given by Peters following the back up signal indicated that the coupling had made; that had it not made the signal to be expected and which he would have expected would have been a stop signal followed by a back up signal, as given on the previous attempts.

Bridegroom testified on direct examination that the coupling made on the third attempt; that while he did not "get down and examine the couplings," the cars "all seemed to be together." On cross-examination he again testified that the cars coupled on the third attempt. He further testified that the signals used that night, as above described, were the regular and customary working signals used in switching and that in the "regular routine of work Mr. Peters would make the coupling and give a kick sign and it would signify he made the coupling and it was all right to go ahead with our regular routine."

The evidence was that Peters was an experienced switchman and familiar with the yard and surroundings.

Under the facts shown by the evidence we think appellant's contention that the alleged violation of the Safety Appliance Act was not a proximate cause of Peters' death must be sustained. Conceding for the purpose of the case that the coupler on one of the cars sought to be coupled together was defective and that by reason thereof the cars failed to couple on the first two attempts, the defective coupler merely furnished the occasion for Peters being between the cars and the platform when the third and successful attempt to couple was made. It did not cause or contribute to cause the movement of the cars that killed him. He was not killed while engaged in the coupling movement. It does not appear whether or not prior to giving the third back up signal he had gone between the ends of the cars to adjust the coupling, but we do not regard it as material whether he had or not. In either event the coupling had been effected, that movement completed, and he was still uninjured, and but for his own act which brought about the further and to him fatal movement of the train would have been in safety. Had he, when the coupling was

completed, climbed upon the platform, which was free of obstruction, or otherwise extricated himself from his then position before giving the kick signal, he would not have been hurt. The movement of engine and cars was under his control and he was experienced in such work and familiar with the environment. Keating testified that it was customary in such work to relay without question whatever signals were given by the switchman in charge of the movement if he was an experienced man as Peters was. Clearly Peters' own negligent act constituted an efficient independent cause intervening between defendant's negligence and the injury complained of, but for which the accident would not have happened, and was the proximate cause of his death.

Since this action is predicated upon alleged violation of the Federal statute it is incumbent upon us to follow the decisions of the Federal courts. See Chicago, M. & St. P. Ry. Co. v. Coogan, 271 U. S. 472; Illinois State Trust Co. v. Mo. Pac. Railway Co., 319 Mo. 608, 5 S. W. (2d) 368; Norton v. Wheelock (Mo.), 23 S. W. (2d) 142, 146.

In Davis v. Hand (C. C. A., 8th Cir.), 290 Fed. 73, in which certiorari was denied, 263 U. S. 705, the facts were so similar to those here involved that the case is regarded as directly in point. Hand was killed by being crushed between a car and the side of a coal bin adjacent to the railroad track. The coal bin at its south end approached so near the track that there was not clearance for a man's body between it and a car on the track. A car stood on the track beside the bin, projecting slightly south of the bin. Hand was fireman of an engine which undertook to couple to the car for the purpose of removing it, and it became his duty to make the coupling, as it was Peters' duty in the instant case. Hand was in charge of the movement, the engineer moving according to Hand's directions. Two unsuccessful attempts to couple by impact were made, the car being shoved farther north each time, so that after the second attempt it was beyond the point where the coal bin was closest to the track. Hand then went between the engine and car, adjusted the coupling, signaled the engineer to back up and the coupling made. Hand then directed the engineer to go ahead, and as the car was moved forward in response to that direction he was caught and crushed between the car and the corner of the coal bin. Had the coupling made on the first attempt he would not have needed to go into the dangerous place. After stating that it was necessary to show that the violation of the Safety Appliance Act was the proximate cause of the injury complained of, the court said:

"Approaching the facts of the present case with this in mind, we inquire—granting, but not deciding, that the failure of the couplers to work automatically under the circumstances here shown con-

stituted a violation of the Safety Appliance Act by the defendant; and required Hand to put himself in a dangerous position—was such violation the direct and proximate cause of the injuries that caused his death? Hand, as the record shows, was in full charge of the operation. The coupling had been fully completed and the train was at a standstill—all before he was injured. From tha point on he was a free agent as far as any violation of law, negligent act, or compulsion exercised by the defendant was concerned. If so, then that cause had ceased to be a governing factor over his conduct. It then became his duty to give the engineer the signal to move out, in such a manner and from such a position as he might select. This he did, according to the evidence, from a position either on the sill at the end of the coal car, or between the coal car and the bin standing on the ground. He had the option to place himself in a safe position, either by climbing up into the car, or by crossing to the far side of the track from the coal bin, and going forward to the engine. It is clear from the evidence that he deliberately took the most dangerous position, and gave the signal that resulted in the train going ahead and crushing him between the coal car and the bin.''

After some further discussion of the facts and a review of several Federal decisions, the court stated its conclusion thus:

''Applying the authorities to the facts as we have analyzed them in the instant case, it is clear that the accident complained of was not the natural and probable consequence of any violation of the statute. It was not such an accident as was intended to be prevented by the statute. The proximate cause was the deceased's carelessness in placing himself in a dangerous position to give the signal, when he could have placed himself in a safe place before so doing. A new and intervening cause was set in motion by the deceased himself after the coupling had been made, and the necessity for his being between the cars, or in the position he was, had ceased.''

See also McCalmont v. Penn. Railroad Co. (C. C. A.), 283 Fed. 736 (certiorari denied, 260 U. S. 751), in which a car with defective coupler, awaiting transfer to the shops for repair, had been attached to another car by a chain and plaintiff's intestate went between the cars to shorten the chain, neglecting to put out a signal flag as the rules required. A collision was caused by the shunting of another car on the track and he was killed. Numerous Federal cases are reviewed and it is held that the proximate cause of the collision and of the injury was the failure to put out the flag, and that the defective coupler was not a cause but only a condition of the injury and did not create liability under the Safety Appliance Act.

It is not sufficient to establish liability that the defective coupling merely furnished the occasion for Peters' going into the place

in which he was later killed. It must have caused or contributed to cause the injury. [Davis v. Hand, supra; Phillips v. Penn. Railroad Co. (C. C. A.), 283 Fed. 381; Ill. State Trust Co. v. Mo. Pac. Railroad Co., supra; Martin v. St. Louis-S. F. Ry. Co. (Mo.), 19 S. W. (2d) 470.] Violation of the Safety Appliance Act in an action predicated upon such violation need not be the sole proximate cause of the injury complained of. If such violation contributes to cause the injury it makes liability. [Spokane & Inland Empire Railroad Co. v. Campbell, 241 U. S. 497.] But there must be a causal relation between the fact of delinquency and the fact of injury. [Lang v. N. Y. Cen. Railroad Co., 255 U. S. 455, 459.] And though the carrier is liable for an injury resulting "in whole or in part" from its negligence in failing to equip its cars as required by the statute, "it necessarily remains true that the partial negligence must be of the same causal nature as if no other element of negligence was present." [Phillips v. Penn. Railroad Co., supra, 283 Fed. l. c. 382.]

Respondent herein contends that "the act of deceased in giving a 'kick' signal, if he did, after the third coupling attempt, from his position when that attempt was made, could amount to no more than contributory negligence," which does not bar recovery and is not to be considered if the violation of the Safety Appliance Act caused or contributed to cause the injury. She cites particularly Chicago, Great Western R. Co. v. Schendel, 267 U. S. 287, 69 L. Ed. 615; Spokane, etc., Railroad Co. v. Campbell, supra; Philadelphia & R. Ry. Co. v. Auchenbach (C. C. A.), 16 Fed. (2d) 550, in support of this contention. We may disregard the suggestion "if he did," because plaintiff's evidence clearly and without dispute shows that he did so give the signal.

In the Schendel case a draw-bar pulled out of a car and the car was chained to the one ahead. The train was pulled upon a siding lying on a gentle grade and stopped, the intention being to cut out and leave the damaged car. Plaintiff's intestate, Ring, acting under the conductor's direction, sent word to the engineer to proceed, and then without knowledge of other members of the crew he and the conductor went between the crippled car and the next one, to disengage the connecting chain. While they were so engaged the engineer cut off the engine, the car ran down the grade, and Ring, caught by the chain, was fatally injured. Ring, in thus going between the cars without advising the engineer of his intention so to do, violated a rule of the company. It was contended that the facts did not bring the case within the Safety Appliance Act, the car having ceased to be "used" within the meaning of the statute; that the defective draw-bar did not proximately contribute to the injury and that Ring's violation of the rule was negligence subsequent to and independent

of the question of a defective appliance "and was a proximate cause of the injury." The court held that the "use, movement or hauling" of the defective car, within the meaning of the statute, had not ended at the time of the accident, and that the things done by the deceased "amounted to no more than contributory negligence or assumption of risk, and both of these are removed from consideration by the Liability Act."

In the Auchenbach case, Auchenbach, a brakeman, was engaged in adjusting a defective coupler after an unsuccessful attempt had been made to couple by impact, when the cars between which he was working were brought together through a signal by a member of the crew of a train on another track, which the engineer mistakenly thought was given by Auchenbach. Auchenbach's hand was caught between the couplers. At the trial the company had offered and the court had rejected evidence to prove that Auchenbach had violated a rule of the company under which he should have left his lantern outside in view of other members of the crew, it being claimed that his negligent failure so to do was the sole proximate cause of his injury. Affirming the action of the trial court, the circuit court of appeals, after referring to the fact that Auchenbach had gone between the cars to prepare for another attempt to couple because the couplers did not at first couple by impact, and discussing a number of Federal cases, said:

"In this situation, where there was nothing to show that the plaintiff's contributory negligence, if any, was other than negligence concurrent with that of the defendant, it follows that an issue of the plaintiff's contributory negligence with its underlying issue of proximate cause was eliminated from the case and, in consequence, evidence to prove it was properly rejected."

The Campbell case involved wholly dissimilar facts. It announces the rule that the violation of the statute need not be the sole efficient cause of the injury, it being sufficient to create liability if it was a contributing cause or "concurring proximate cause" in which case the employee's contributory negligence is to be disregarded.

To the same effect, see St. Louis Mer. Bridge Term. Ry. Co. v. Schuerman, 237 Fed. 1.

In the last mentioned case Schuerman (plaintiff below) had gone between the cars to adjust a defective coupler which had failed to couple on impact and having adjusted it gave a back-up signal in order to effect the coupling, and in attempting to get in the clear his foot caught in a frog and he was injured. His giving of the signal was treated as contributory negligence, therefore no defense. The court said in its discussion: " . . . if the plaintiff had not been compelled to go between the cars *to effect this coupling* he would not have been injured." (Italics ours.)

In Grand Trunk Ry. Co. v. Lindsay, 233 U. S. 42 (reviewing a decision of the circuit court of appeals, 201 Fed. 836), it became necessary for Lindsay to go between the cars to adjust a defective coupler so that it would couple, after an unsuccessful attempt to couple by impact. Before going between the cars he had given a "stop-and-stand" signal. While endeavoring to adjust the coupler so that the coupling could be made, someone gave a "come-ahead" signal (like in purpose to the back-up signal given by Peters in this case), in response to which the cars were moved together and Lindsay was injured. Lindsay denied having given the latter signal, but there was evidence from the company's witnesses that he had done so. The trial court had refused to instruct that if he gave the signal his doing so was the proximate cause of his injury and he could not recover. The judgment was affirmed, both the Supreme Court and the Circuit Court of Appeals obviously treating Lindsay's act in going between the cars as he did and in giving the signal, if he gave it, as contributory negligence and not the sole proximate cause of his injury.

Hood v. B. & O. Railroad Co., 302 Mo. 609, 259 S. W. 471, is also a case in which the plaintiff in discharge of his duty and before completion of the coupling movement went between cars to examine a coupler which had failed to couple on impact, his purpose being to effect the coupling, and was there injured by the cars being brought together. He had failed to give notice of his intention to go between the cars, which was held to have been only contributory negligence.

In the foregoing and other cases cited by respondent, wherein injury occurred in a coupling operation and it was held that the injured employee's negligence in going between the cars or in giving a signal to move the cars amounted only to contributory neligence, the coupling or uncoupling had not been completed and the injury occurred while the employee was in line of his duty working to effect it; in which respect we think those cases are distinguishable from Davis v. Hand, supra, and from the case at bar.

We are not to be understood as holding that an employee must be actually engaged in attempting to effect a coupling in order to be within the protection of the Safety Appliance Act. The rule is thus stated in Davis v. Wolfe, 263 U. S. 239, 243, after reviewing former decisions:

"The rule clearly deducible from these four cases is that, on the one hand, an employee cannot recover under the Safety Appliance Act if the failure to comply with its requirements is not a proximate cause of the accident which results in his injury, but merely creates an incidental condition or situation in which the accident, otherwise caused, results in such injury; and, on the other hand,

he can recover if the failure to comply with the requirements of the act is a proximate cause of the accident, resulting in injury to him while in the discharge of his duty, although not engaged in an operation in which the safety appliances are specifically designed to furnish him protection.''

In Ill. State Trust Co. v. Mo. Pac. R. Co., supra, one Bardmass was crushed between two cars, one of which had a defective coupler which had permitted the cars to separate. While attempting to adjust the defective coupler another car which had been uncoupled from the engine moved, from some unknown cause, against the one upon which Bardmass was working, killing him. It was held that the violation of the Safety Appliance Act was merely one of the conditions which brought about the situation making the accident possible, and that the unexpected and unexplained movement of the car which collided with the one at which Bardmass was working was the proximate cause of his death. Several of our own decisions and many from the Federal courts, including most of those relied upon by respondent herein, are reviewed in the opinion. The judgment in favor of plaintiff was reversed. Certiorari was denied, 278 U. S. 623. See also Martin v. St. Louis-S. F. Ry. Co., supra, which involved somewhat similar facts; Rittenhouse v. St. Louis-S. F. Ry. Co., 299 Mo. 199, 252 S. W. 945.

It is urged that the question of what is the proximate cause of the injury is generally for the jury. Where there is evidence from which the conclusion might properly be drawn that the injury resulted proximately from the negligence charged the question is for the jury. But where under the admitted facts there is legally no liability the court should so declare.

The conclusion we have reached renders unnecessary a consideration of appellant's criticism of certain instructions and its contention that the verdict is excessive.

For the reasons indicated the judgment of the circuit court is reversed. *Westhues* and *Fitzsimmons, CC.,* concur.

PER CURIAM:—The foregoing opinion of Cooley, C., is adopted as the opinion of the court. All of the judges concur.