G. M. ALCORN v. MISSOURI PACIFIC RAILROAD COMPANY, a Corporation, Appellant.—63 S. W. (2d) 55.

Division One, August 24, 1933.

*Thomas J. Cole, Ragland, Otto & Potter, Montgomery & Rucker, Pendleton & Martin* and *W. V. Draffen* for appellant.

*Thomas C. Swanson* and *Trusty & Pugh* for respondent.

830

HYDE, C.—This is an action for personal injuries under the Federal Employers' Liability Act, Title 45, U. S. C. A., sections 51-59, charging a violation of Section 2 of the Safety Appliance Act. The petition alleges that plaintiff was between the freight cars of an interstate train "because the same would not couple automatically by impact without the necessity of plaintiff's going between same for the purpose of adjusting the couplers and to aid in making the coupling." Defendant's answer set up both assumption of risk and that plaintiff's own negligence was the sole cause of his injuries. As to the latter the answer states: "That plaintiff voluntarily assumed a position between the freight platform . . . and a moving train. Plaintiff knew that there was not sufficient clearance between said train and said platform to enable plaintiff to stand between said platform and said train without being injured." Plaintiff obtained judgment for $20,000 and defendant has appealed. It is not claimed that this verdict is excessive and the interstate character of the work is not disputed.

Appellant in its brief states the facts as follows:

"Plaintiff was in the employ of defendant as brakeman. On the morning of December 21, 1929, he was head brakeman on one of defendant's freight trains running from St. Louis to Sedalia. At Hermann, an intermediate station, the three cars next to the engine were to be set out and left there. When the train reached Hermann, at 6:15 A. M., the coupling between the third and fourth cars from the engine was disconnected, the engine and the three cars then proceeded on west to a switch, and then backed east through the switch on to the house track. As it continued to proceed east plaintiff was riding on the ladder on the north side of the third car from the engine and on the east end thereof. The movements of the train were entirely under his control; he gave to the engineer such signals as he deemed necessary and the engineer obeyed them. There were two freight cars standing on the house track coupled together; it was plaintiff's purpose to couple the cars; the engine was moving east into these standing cars. (It is not questioned that it was also his duty.)

"On the north side of the house track there was a loading platform approximately eighty feet long. There was not sufficient clearance between the platform and the cars moving on the track for a man to stand and work. The westernmost one of the cars standing on the house track, the one to be coupled into, extended west of the loading platform about five feet. When the cars being moved by the engine came against this car, the coupling djd not 'make.' Thereupon plaintiff stopped the engineer; the car with which the coupling was to be made rolled away about a car's length, fifty feet. Plaintiff then climbed down and went around to the end of the car he had been riding and adjusted the coupler. He next walked to the end of the car that had rolled a car length away and adjusted the coupler on it; he then stepped over the north rail of the track into the space between the track and the platform and gave the engineer a signal to come back. The engineer moved the cars in compliance with the signal and the two cars which came together coupled by impact; but as the first one of the approaching cut being moved by the engine came along it caught plaintiff and rolled him between the car and the platform, causing the injuries for which he seeks recovery. All of the cars were standing still while adjustments of the couplers were being made, and remained motionless until plaintiff gave the back up signal.''

Respondent does not dispute these general facts but says that he remained where he would be between the cars, when they came together for the purpose of seeing whether the coupling made on the second impact and doing something further if it did not, and that after they came together the second time he attempted to signal the engineer to stop, but was caught between the first of the moving cars and the platform before he could do so. The plaintiff himself was the only witness as to just what he did and he detailed the facts, as follows:

"Q. And then what did you do next? A. Walked around the car that was on the engine and opened this knuckle—got hold of the pin lifter on the south side and tried to open the knuckle. I had to jerk it three or four times to get it up and finally I got it open. Q. When you find one hard to open like that, do you know whether or not it is going to close or drop down again? A. No, sir. Q. Can you explain or do you know what made it hard to open—did you find out or investigate? A. No, sir, I didn't find out what was the matter with it. Q. When the pin lock does not drop, how do you get them down? A. You have to jerk them down sometimes, and sometimes knock them down and sometimes hit them and they will go down. Q. After you got this lock up and the knuckle open on the car you rode in on, then what did you do with reference to the other coupler on the standing car? A. I walked back and adjusted the knuckles on the standing car. Q. Explain what you had

to do and how you did it? A. This knuckle was standing open and I shoved it to and the pin lock didn't drop, and I had to take my finger and guide it down through the hole. I did it with this hand and held the pin lifter with this hand, so I could guide it down through the hole like this (indicating). . . .

"MR. TRUSTY: When you made the adjustments on the west end of the car that was standing alongside the platform—the last one we were talking about—when you got those adjustments made, what did you do then—how did you move? THE WITNESS: This car was right close to me. Q. Which car? A. The car that was coupled onto the engine. Q. What did you do? A. The cars coupled as they came together, and as they came together, I stepped away from the drawbar and something on this car caught and jerked me around in between the car and the platform. Q. On which car was it something caught you? A. On the car coupled to the engine.
. . . MR. TRUSTY: Tell whether or not you were between the ends of the cars when you got caught? THE WITNESS: Yes, sir, I was between the cars. Q. Did the cars stop when the moving car came against the other one or not? A. No, sir. . . . Q. Tell the jury what you were doing in there. A. *I was in there for the purpose of seeing that this other pin lock dropped and the coupling made.*" (Our italics.)

A few days after respondent's injury he made a written statement to appellant's trainmaster which appellant offered in evidence and which contained the following recital of the facts:

"I stopped the engineer, and walked in between the cars, opened knuckle on the car that was coupled to the engine, which was the third car behind engine. These two cars at platform rolled back about a car length. - I walked back and closed the knuckle on the car that was standing at platform, gave the engineer a back up signal, and *I stayed in there to see if coupling made,* and figured on stopping engineman soon as coupling made, then getting out from between cars. *When the coupling made I just stepped back from between cars,* as a habit I have, I guess. The car that coupled into it, which was MP 81753, caught me and jerked me around in between this car and the platform. I couldn't get my arm up to give engineer a signal to stop until about half of this car had shoved by me while between car and platform. . . . Q. You stopped engineer while opening knuckle on rear car of cut? A. Yes. Q. Then what did you do? A. Then I walked back and closed knuckle on car to be coupled into MP 34699. *Took position outside of the north rail on house track at west end of car.* Then gave engineer a signal to back up, which he did, making the coupling. . . . Q. Was not the injury sustained by you the result of lack of precaution on your part (knowing that the platform afforded extremely close clearance from past experience in doing work at this point), in that you failed

to get in a place of safety when making the coupling opposite the platform. A. *I expected to walk between the cars until I got him stopped and then climb out.*" (Our italics.)

It was further shown by respondent's testimony that the cars projected beyond and outside of the rail about two feet; that he did not know whether the coupling was made or not on the second impact; that after that impact the cars did not immediately stop but continued to move back a half a car length or better; that he was in that movement caught and jerked between the first moving car and the platform; that his arms were pinned down when he was caught by the car so that he could not use his lantern to give a stop signal; that he got the engineer stopped by yelling; that the engineer's position during the switching movement was on the right side of the engine which was on the north side of the track; that it was dark at the time; and that respondent was hurrying to get the work done because they had both lines blocked and other trains were due to arrive on these lines.

Respondent has filed a motion to dismiss the appeal because appellant's assignments are too general (there are only two of them). We find it clearly apparent what appellant's contentions are and the motion is therefore overruled.

Appellant's first assignment of error is that "the trial court erred in refusing to direct a verdict for defendant at the close of all the evidence." Appellant's contention upon this assignment is that the defective couplers were not the proximate cause of respondent's injury but that his own negligence was the sole proximate cause. This negligence is stated in appellant's brief to be: "Taking a position between the north rail of the house track and the loading platform and then ordering the engineer to back up to make the couple." Appellant says:

"*The defect had been removed* by the appellant through its employee; the cars would then couple by impact. *There was therefore no occasion for respondent to thereafter go or be between the cars at or prior to the time the coupling was made; and he did not do so.* There was nothing further that he could have done to assist in making the coupling; he said he took the position he did to see whether the coupling made, not to participate in any way in the operation, other than giving the engineer the signal to bring the cars together, and there is not the slightest suggestion that he could not have given the signal and ascertained whether the coupling made from a position where he would have been absolutely safe."

In Philadelphia & Reading Ry. Co. v. Auchenbach, 16 Fed. (2d) 550, certiorari denied, 273 U. S. 761, 47 Sup. Ct. 476, 71 L. Ed. 878, a similar contention was made, namely: That although the cars failed to couple on the first impact there was no evidence on which to submit the case, because the defective condition of the couplers

834

did not exist at the time of the injury since on the next impact they coupled automatically. There it was contended that plaintiff's violation of a rule in going between the cars was the sole cause of his injury. The Circuit Court of Appeals, Third Circuit, said:

"The defendant's negligence, if any, consisted in violating a duty imposed by statute. The statute made it obligatory upon the defendant to equip its cars with safety appliances of a kind defined by their operation, namely, couplers that will couple automatically by impact. That duty is absolute and unqualified and contemplates the maintenance of such appliances in working condition 'at all times.' [P. & R. Railroad Co. v. Eisenhart (C. C. A.), 280 Fed. 271, 276, and cases cited.] The test of the observance of this duty is the performance of the appliances. 'The failure of a coupler to work at any time sustains a charge that the Act has been violated.' [St. L., I. M. & S. Railroad Co. v. Taylor, 210 U. S. 281, 28 Sup. Ct. 616, 52 L. Ed. 1061; C., B. & Q. Railroad Co. v. United States, 220 U. S. 559, 31 Sup. Ct. 612, 55 L. Ed. 582; San Antonio & Arkansas P. Railroad Co. v. Wagner, 241 U. S. 476, 36 Sup. Ct. 626, 60 L. Ed. 1110; Chicago, R. I. & Pac. Ry. Co. v. Brown, 229 U. S. 317, 320, 33 Sup. Ct. 840, 57 L. Ed. 1204; Auchenbach v. P. & R. Railroad Co. (C. C. A.), 8 Fed. (2d) 350, 351; M. & St. L. Railroad Co. v. Gotschall, 244 U. S. 66, 37 Sup. Ct. 598, 61 L. Ed. 995.] Applying this test to the evidence which shows the failure of the couplers to couple and the difficulty the plaintiff had in pushing the pin down and working the coupler in and out in order to prepare it for another attempt we think there was enough to sustain the verdict."

Appellant's argument here, however, is based upon a false premise because it assumes the facts to be that *there was no occasion for respondent to go or to be between the cars at the time the coupling was made and he did not do so.* We think it is apparent from the portion of respondent's testimony at the trial and the portion of his statement to appellant's trainmaster which we have hereinabove set out that these were questions of fact for the jury. The clear meaning of respondent's testimony and statement undoubtedly is (or at least the jury could so find) that at the time the cars coupled respondent was in a position where he would be between the cars when they came together; that he intended to keep between them until they stopped; and that he got between the platform and the end of the first of the oncoming cars after the coupling was made when he started to signal to the engineer to stop. Appellant's contention assumes that, after the couplers were adjusted it was certain that the cars would couple on the next impact and that respondent absolutely knew they would do so. The jury might reasonably infer that it might have been necessary, to complete the coupling when the cars came together, for respondent to do something to make the pin lock drop or at least that there was some probability that the cars would

fail to couple on the second attempt; that, if so, further adjustment of the couplers might be required; and that it was respondent's duty to stay with and keep working with the couplers until the coupling did make and to complete the coupling as promptly as possible. Appellant relies namely upon Peters v. Wabash Ry. Co., 328 Mo. 924, 42 S. W. (2d) 588, and Davis v. Hand, 290 Fed. 73, certiorari denied, 263 U. S. 705, 44 Sup. Ct. 34, 68 L. Ed. 516. In both of these cases, a railroad employee signaling for movements to make a coupling had ordered two attempts, both of which failed to couple by impact. In both of these cases the third movement ordered did make the coupling and in both of them the employee thereafter, while not between the cars, when there was no further reason to be between them on account of anything connected with the coupler, and when he was in fact between the side of the cars and a platform or building, signaled for a further movement of the train to move away with the coupled cars and was injured by such further movement. In the Peters case, 328 Mo. 924, 42 S. W. (2d) l. c. 591, this court said:

"The defective coupler merely furnished the occasion for Peters being between the cars and the platform when the third and successful attempt to couple was made. It did not cause or contribute to cause the movement of the cars that killed him. *He was not killed while engaged in the coupling movement.* It does not appear whether or not, prior to giving the third back up signal, he had gone between the ends of the cars to adjust the coupling, but we do not regard it as material whether he had or not. In either event, the coupling had been effected, that movement completed, and he was still uninjured, and but for his own act which brought about the further, and to him fatal, movement of the train would have been in safety. Had he, when the coupling was completed, climbed upon the platform, which was free of obstruction, or otherwise extricated himself from his then position before giving the kick signal, he would not have been hurt. . . . Clearly Peters' own negligent act constituted an efficient independent cause intervening between defendant's negligence and the injury complained of, but for which the accident would not have happened, and was the proximate cause of his death." (Our italics.)

In the Hand case the United States Circuit Court of Appeals, Eighth Circuit, said:

"*The coupling had been fully completed and the train was at a standstill—all before he was injured.* From that point on he was a free agent as far as any violation of law, negligent act, or compulsion exercised by the defendant was concerned. If so, then that cause had ceased to be a governing factor over his conduct. It then became his duty to give the engineer the signal to move out, in such a manner and from such a position as he might select. This he did, according to the evidence, from a position either on the sill at the end of the

coal car, or between the coal car and the bin standing on the ground. He had the option to place himself in a safe position, either by climbing up into the car, or by crossing to the far side of the track from the coal bin, and going forward to the engine. It is clear from the evidence that he deliberately took the most dangerous position, and gave the signal that resulted in the train going ahead and crushing him between the coal car and the bin. . . .

"It is clear that the accident complained of was not the natural and probable consequence of any violation of the statute. It was not such an accident as was intended to be prevented by the statute. The proximate cause was the deceased's carelessness in placing himself in a dangerous position to give the signal, when he could have placed himself in a safe place before so doing. *A new and intervening cause was set in motion by the deceased himself after the coupling had been made, and the necessity for his being between the cars, or in the position he was, had ceased.*" (Our italics.)

Those cases are clearly distinguished by their facts from the present case. Here, the train was not, as in those cases, at a standstill with the coupling fully completed before respondent was injured, but instead he was injured in the movement in which the coupling was made. He was doing (if his evidence is believed) just what it is pointed out that Peters and Hand were not doing, namely, engaging in a not yet completed coupling movement, so that here no *"new and intervening cause was set in motion by the deceased himself after the coupling had been made and the necessity for his being between the cars, or in the position he was, had ceased."* He was there because a defect in the coupler, which he had attempted to remedy, made it appear to him reasonably necessary that he should be there. We, therefore, hold that the trial court was correct in overruling appellant's demurrer to the evidence because it was proper to submit to the jury the question of whether the defective coupler contributed to respondent's injury.

Appellant's other assignment of error is that "the trial court erred in giving plaintiff's Instruction 1." This instruction was in fact marked "A" instead of "1." It is, however, the only instruction, except the instruction on the measure of damages, offered by respondent and is the main instruction authorizing a recovery so that there is no possible confusion about it being the instruction referred to. It first stated the requirements of the Federal Safety Appliance Act and then continued, as follows:

"And, so, if you find from the evidence that at the time and place in question the coupling device or appliances failed to couple automatically by impact when the first attempt to couple was made, and that Alcorn could not remain entirely outside and from between the cars and in the clear of any danger from the movement of the cars and adjust and manipulate the parts of the couplers by the appliances

connected therewith, so as to make the coupling automatically by impact, then the defendant violated the above law, and he had a right to go in between the cars, and if you find from the evidence *that it appeared to the plaintiff to be reasonably necessary for him to go, or to be, in between the cars until he got such coupling made,* then he had a right to do so;

"And, if you further find from the evidence *that plaintiff did go in between the cars and that he went in between them to so bring about such coupling;* and,

"If you further find from the evidence *that if said coupler had not been in such condition, if so, and if plaintiff had not so gone in between the cars for such purpose, he would not have been injured,* then you must return a verdict for plaintiff;

"And, this would be so, regardless of every other fact or circumstance in this case; and you must not take into consideration or be influenced, either here or as to the issue of damages, by the question as to whether the plaintiff was negligent or not negligent, as the risk and the result under said law would be solely that of the railroad company, and this would be so, even if the plaintiff could have gone between and fully adjusted or regulated the couplers, or their parts, while the cars were standing still, and then gotten into the clear and avoided the injury, and this would be so whether Alcorn gave a back up signal and then adjusted the parts of the coupler on the standing car, or first made such adjustments and then stepped to the outside of the rail, or in a position where he would be caught by, or between, the cars and the platform, and gave such back up signal, or was stepping from between the cars when he got caught; and this is so regardless of whether the coupling made or failed to make." (Our italics.)

The following instruction was given, at appellant's request:

"If you find and believe from the evidence that on the 21st day of December, 1929, the plaintiff was in the employ of the defendant in the capacity of head brakeman on its Train No. 75, and that while plaintiff was so employed and while participating in a coupling movement of several freight cars at Hermann, Missouri, and while the cars were at a standstill, the plaintiff adjusted the coupling apparatus on the two cars to be coupled, and *that thereafter the plaintiff assumed a position on the north side of the north rail of the track upon which the cars were standing, and that from that position the plaintiff gave a back up signal to the engineer* in charge of the engine attached to certain cars described in evidence, which caused said engine and cars to be put in motion and to be backed into the two standing cars mentioned in evidence which were not attached to the engine, *and if you find that in that movement the plaintiff was caught between the east car of the moving cars mentioned in evidence and the platform mentioned in evidence,* and if you further find that as

a result thereof the plaintiff received the injuries of which he complains, then *your verdict must be for the defendant."* (Our italics.)

Appellant's complaint about respondent's instruction are: First, that it told the jury that as a matter of law the defective couplers were the proximate cause of respondent's injury instead of leaving that question to the jury; and second, that it also was in conflict with appellant's instruction because it told the jury that respondent was entitled to recover even though he had "made the adjustment of the couplers while the cars were standing still and then stepped outside the rails into a position where he would be caught between the cars and the platform and gave the engineer the back up signal," under which circumstances, appellant's instruction told the jury that he could not recover.

■ Concerning appellant's first criticism of this instruction, we think respondent's testimony and his statement to the trainmaster both justified the finding that he thought it necessary to remain where he thought he would be between the cars for the purpose of seeing that they coupled and to work further with the couplers if they did not and that he intended to do so until the coupling made. We think the evidence justifies the finding that he might well have thought it reasonably necessary to do so, both because the condition of the couplers might require some assistance in making the coupling and because if the coupling did not make he could readjust the couplers and bring about another attempt to couple more quickly. Respondent's instruction required the finding, first, that the couplers had already failed to couple automatically by impact on first attempt; second, that respondent could not remain outside and from between the cars and adjust the couplers; third, that it appeared reasonably necessary to him to go or to be in between the cars until he got a coupling made; fourth, that he went between the cars to bring about the coupling; fifth, that if the coupler had not been in a condition which violated the act and if respondent had not gone in between cars to bring about the coupling he would not have been injured. We must keep in mind that under the Federal Act it is not necessary to respondent's recovery that the condition of the coupler be the sole cause of his injury. Violation of the act is the same as negligence *per se;* (McAllister v. St. Louis Merchants Bridge Terminal Ry. Co., 324 Mo. 1005, 25 S. W. (2d) 791, and cases cited) and it is only necessary that injury result "in whole or in part" therefrom. [Title 45, U. S. C. A. sec. 51.] We think this instruction leaves to the jury the truth of respondent's testimony, the questions of whether the condition of the couplers violated the act, and of whether such violation was a proximate or contributory cause of respondent's injury. It could have been more clearly worded, but we do not think the jury would fail to understand from it that in order to find a verdict for respondent they must find that he was between the

cars (or, at least, where he thought he would be between them when they came together) because of the condition of the couplers and because it reasonably appeared that due to that condition it might be necessary for him to do something further to make the coupling.

The next objection seems, however, a more serious one. The question is whether the last paragraph of respondent's instruction nullifies the prior part of the instruction requiring the jury to find that respondent went between the cars to be between them until he got the coupling made. This part of the instruction concerns only respondent's negligence but it assumes that any of the acts of respondent described in regard to the posiiton he took to await the result of the next impact would only be contributory negligence and could not have been the sole cause of his injury. The alternative acts specified were: (1) If he first gave a back up signal and then adjusted the coupler on the standing car; (2) if he first made the adjustments and then stepped to the outside of the rail in a position where he would be caught between the cars and the platform and gave the back up signal or (3) if he was stepping from between the cars after the coupling made when he got caught. It may be conceded that the above alternative number 2 is in direct conflict with the italicized portion of appellant's instruction above set out. But did not appellant get a more favorable instruction than it was entitled to have? Appellant's theory, as stated in this instruction, is that, as a matter of law respondent was negligent and such negligence was the sole cause of his injury, if after adjusting the coupler on the standing car he stepped back between the north rail and the platform where he could be caught between the moving car and the platform and then gave a back up signal from that position instead of getting on top of the platform where he would have been safe. It tells the jury that if they believe he took that position, disregarding all other facts, they must find for appellant. Respondent's theory as stated in the last paragraph of his instruction on the other hand is that taking that position and giving the back up signal therefrom was, if negligence, only contributory negligence. If appellant was entitled to its instruction then, of course, respondent's instruction is reversible error. On the other hand, if taking such position and giving a back up signal from it is, as a matter of law no more than contributory negligence, then appellant's instruction was more favorable than it was entitled to have and respondent's instruction is not error, because "neither assumption of risk nor contributory negligence may be interposed as a defense in cases under the Safety Appliance Act. [27 U. S. Stat. 531 (45 U. S. C. A. secs. 1-7); 35 U. S. Stat. 65 (45 U. S. C. A. secs. 51-59),]" [McAllister v. St. Louis Merchants Bridge Terminal Railroad Co., 324 Mo. 1005, 25 S. W. (2d) 791; see, also, 45 U. S. C. A. secs. 53-54, and cases in annotations.]

We think this question is ruled by the decision of the Supreme Court of the United States in Grand Trunk Western Ry. v. Lindsay, 233 U. S. 42, 34 Sup. Ct. 58, 58 L. Ed. 838. In that case there was evidence that a switchman, when after an attempt to make a coupling by impact the cars failed to couple, stepped in between the cars to ascertain the trouble and also gave a signal to the engineer with his lantern to come ahead. The engineer pushed the other cars up and the switchman's arm was crushed between the couplers. The defendant asked the court to instruct as a matter of law that, if the switchman in going between the cars to examine the coupling mechanism gave a come ahead signal, "his act was the proximate cause of his injury and therefore he could not recover." The court refused to give this instruction, but gave an instruction containing the following language:

"You are further instructed that if you believe from the preponderance of the evidence that the plaintiff gave a 'come-ahead' signal to the switchman or engineer,—one or both,—and after that went between the cars and was injured, then you have a right to consider whether the giving of the 'come-ahead' signal by the plaintiff was the proximate cause of the injury as distinguished from the condition of the coupler, and if you find that, under the circumstances, the 'come-ahead' signal was the proximate cause of the injury, then your verdict must be for the defendant.

"You are also instructed that where there is a safe and a dangerous way of doing an act, and the servant uses a dangerous way and is injured thereby, he is charged with negligence on his part and may not recover."

The court, however, held that even this instruction was more favorable than the defendant was entitled to have because as a matter of law the switchman's act in giving the "come-ahead" signal while he was in such a dangerous position was only contributory negligence, saying:

"But having regard to the state of the proof as to the defect in the coupling mechanism, its failure to automatically work by impact after several efforts to bring about that result, all of which preceded the act of the switchman in going between the cars, in the view most favorable to the railroad, the case was one of concurring negligence; that is, was one where the injury complained of was caused both by the failure of the railway company to comply with the safety appliance act and by the contributing negligence of the switchman in going between the cars. Under this condition of things it is manifest that the charge of the court was greatly more favorable to the defendant company than was authorized by the statute for the following reasons: Although by the third section of the Employers' Liability Act a recovery is not prevented in a case of contributory negligence, since the statute substitutes for it a system of comparative negligence,

whereby the damages are to be diminished in the proportion which his negligence bears to the combined negligence of himself and the carrier,—in other words, the carrier is to be exonerated from a proportional part of the damages corresponding to the amount of negligence attributable to the employee (Norfolk & W. Railroad Co. v. Earnest, 229 U. S. 114, 122, 57 L. Ed. 1096, 1101, 33 Sup. Ct. Rep. 654),—nevertheless, under the terms of a proviso to the section, contributory negligence on the part of the employee does not operate even to diminish the recovery where the injury has been occasioned in part by the failure of the carrier to comply with the exactions of an act of Congress enacted to promote the safety of employees. In that contingency the statute abolishes the defense of contributory negligence, not only as a bar to recovery, but for all purposes.''

We think the situation here is the same. The Lindsay case holds it was only contributory negligence for the switchman to give the signal for the cars to come together and thereafter go into a place of danger where he would be likely to be injured by the movement of the cars, in compliance with his signal, to make the coupling namely, go between the cars and remain there with his arm between the couplers. In the present case, therefore, if respondent stepped between the rail and the platform at the end of the standing car and from that position gave the signal for the cars to come together he likewise went into and remained in a dangerous place, a place in which he would be caught between platform and the end or side of the oncoming car if it moved past him and he did not move with it fast enough to keep ahead of it and between the end of it and the standing car. It is apparent from both his testimony and his statement that he intended to keep between the cars when they coupled together, moving along with them and between them until he was able to stop the engineer by signal with the lantern rather than merely standing still and waiting for them to go by if they coupled when he could have seen the clearance was insufficient (although under the Lindsay case, that also being only an improper way of doing the work, he had a right to or was expected to do would still be only contributory negligence). While it may be conceded that way of doing the work was not the safest way to do it, yet there was apparently some reason under the circumstances for doing it in that manner. It was dark, respondent was trying to clear the main lines, blocked by this switching movement, promptly by hurrying the completion of the coupling operation which had once failed. It cannot be said, under the evidence, that he knew that it was certain that the coupling would be made on the impact. His testimony showed several conditions of the couplers, which might prevent them from working properly. The jury could well find that it appeared reasonably probable that further adjustment of the couplers and another attempt to couple might be required and therefore that it

might reasonably seem necessary to respondent, to more quickly assist in the completion of the coupling movement, to remain on the ground where he would be between the cars when they came together the second time. It is apparent that he got caught between the car and the platform because it moved farther or faster than he expected it would or that he, in attempting to step where he could signal the engineer to stop, did not move quickly enough in the direction the cars were moving to keep in the clear in front of the end of the car moving toward him. If, under these circumstances, what respondent did conformed to customary methods of doing such work the question of whether his conduct was even contributory negligence would be for the jury. [Lovett v. Kansas City Terminal Ry. Co., 316 Mo. 1246, 295 S. W. 89.] Conceding, however, that his conduct was negligent, under the Lindsay case it was contributory negligence, and that was not a defense available in this case to appellant.

The recent decision of the Circuit Court of Appeals, Third Circuit, hereinabove referred to, Philadelphia & Reading Ry. Co. v. Auchenbach, 16 Fed. (2d) 550, certiorari denied, 273 U. S. 761, 47 Sup. Ct. 476, 71 L. Ed. 878, is in point also upon this question of whether respondent's negligence could have been the sole cause of his injury or was no more than contributory negligence as a matter of law. The plaintiff in that case, a brakeman, was adjusting a defective coupler after an attempt to couple by impact had failed. Another member of the crew of the train gave a signal which the engineer thought was given by plaintiff. When the cars came together plaintiff's hand was caught between the couplers and injured. It was contended that plaintiff violated a rule, requiring an employee going between cars at night to leave his lantern outside on the ground in view of other members of the crew, and that the violation of this rule constituted negligence on his part which was the proximate and sole cause of his injury. The court said:

"If his act amounted to negligence it was no more than contributory negligence which was removed from consideration by the Act. [Chicago, G. W., Railroad Co. v. Schendel, supra; Auchenbach v. P. R. Railroad Co., supra.] Moreover, it is the law that a violation of the Act need not be the sole efficient cause in order that an action may lie. So also the element of proximate cause is eliminated where concurrent acts of the employer and employee contribute to the injury. [Spokane & Island E. Railroad Co. v. Campbell, 241 U. S. 497, 510, 36 Sup. Ct. 683, 60 L. Ed. 1125; Pless v. New York Central Railroad Co., 189 App. Div. 261, 179 N. Y. Supp. 578, affirmed, 232 N. Y. 523, 134 N. E. 555.] In this situation, where there was nothing to show that the plaintiff's contributory negligence, if any, was other than negligence concurrent with that of the defendant, *it follows that an issue of the plaintiff's contributory*

*negligence with its underlying issue of proximate cause was eliminated from the case* and, in consequence evidence to prove it was properly rejected. [Southern Railroad Co. v. Crokett, 234 U. S. 725, 34 Sup. Ct. 897, 58 L. Ed. 1564; Great Northern Railroad Co. v. Otos, 239 U. S. 349, 36 Sup. Ct. 124, 60 L. Ed. 322; T. & P. Railroad Co. v. Rigsby, 241 U. S. 33, 36 Sup. Ct. 482, 60 L. Ed. 874; Atlantic City Railroad Co. v. Parker, 242 U. S. 56, 37 Sup. Ct. 69, 61 L. Ed. 150; Union Pacific Railroad Co. v. Huxoll, 245 U. S. 535, 38 Sup. Ct. 187 62 L. Ed. 455.]'' (Our italics.)

Investigating the matter further we find in other recent cases decided by the United States Supreme Court and by this court, that somewhat similar conduct has been held to be as a matter of law contributory negligence only. In Chicago, Great Western Ry. Co. v. Schendel, 267 U. S. 287, 45 Sup. Ct. 303, 69 L. Ed. 614, where a brakeman went between a car with a defective coupler and the next one to disengage a connecting chain and was caught and injured by the chain, when the engineer cut off the engine and the car ran down grade, it was said that his conduct amounted "to no more than contributory negligence or assumption of risk, and both of these are removed from consideration by the Liability Act." In Carter v. St. Louis, Troy & Eastern Railroad Co., 307 Mo. 595, 271 S. W. 358, where a section man went under a freight car to eat his lunch and was injured by other cars which failed to couple by impact running against it, this court affirmed plaintiff's verdict, holding that "whether the failure of the coupler to couple by impact was the proximate cause of plaintiff's injury was clearly for the jury" and that "the defenses of contributory negligence and assumption of risk are therefore not available to defendant in this action." In Hood v. B. & O. Ry., 302 Mo. 609, 259 S. W. 471, it was contended that a car inspector's own negligent acts in going to examine a coupler which would not remain closed after the foreman had told him "to keep out from between the cars and without knowing that he was there, signaled the engineer to back the cars and attempt to make the coupling." It was held that it would be contributory negligence to go between the cars without notifying the foreman and that "it would not preclude a recovery in this case, nor would it be a defense in an action of this character based upon the Safety Appliance Act." In Brock v. M. & O. Ry. Co., 330 Mo. 918, 51 S. W. (2d) 100, certiorari denied, 287 U. S. 638, 53 Sup. Ct. 87, 77 L. Ed. 38, we held that the failure of a railroad employee to comply with a rule was not the sole cause of his injury but contributory negligence and that the Federal Employers' Liability Act allowed recovery where the injury resulted "in whole or in part" from any negligence or defect for which the railroad is liable. In M., St. P. & S. S. M. Ry. Co. v. Goneau, 269 U. S. 406, 46 Sup. Ct. 129, 70 L. Ed. 335, it was held to be only contributory negligence on the part of a

brakeman to attempt "to get the carrier iron back in place so as to hold the coupler in a position where it would interlock" while the car was standing on a narrow bridge. The brakeman, while pulling the carrier iron in place, lost his balance and fell off the bridge. The contention was also made that submission to the jury under the Safety Appliance Act was not warranted because the defective car was motionless at the time and not in use and the brakeman was not engaged in any coupling operation or car movement. The United States Supreme Court said: "There was substantial evidence tending to show that *the defective coupler was a proximate cause* of the accident resulting in the injury to Goneau while he was engaged in making a coupling in the discharge of his duty, the case was rightly submitted to the jury under the Safety Appliance Act." [269 U. S. l. c. 410.] For an example of a case where there was a jury question as to whether an injured employee's negligence was the sole cause of his injuries see D. T. & I. Railroad Co. v. Hahn, 47 Fed. (2d) 59, certiorari denied, 283 U. S. 842, 51 Sup. Ct. 489, 75 L. Ed. 1452.

If the jury found, as required by the first part of respondent's instruction, that a defective condition of the couplers was a contributing cause of respondent's injuries, then he was entitled to recover regardless of whether he was guilty of negligence which also contributed thereto. Therefore, the last paragraph of respondent's instruction was not erroneous in instructing the jury that his acts therein described would not prevent his recovery, if those acts as a matter of law would only be contributory negligence. We hold that, since there is sufficient evidence in this case to show respondent was at or near the end of the standing car for the purpose of doing something further, which appeared to him might be reasonably necessary, to promptly complete the coupling movement, it makes no difference (so far as showing a defense to this action for his injuries is concerned) whether he stood inside or outside the north rail, was caught by the oncoming car at the time and place of the impact, or thereafter, when the cars had moved beyond that place, and that whichever one of the three alternatives stated in said instruction might be the true fact respondent's conduct therein specified would only be contributory negligence.

The judgment is affirmed. *Ferguson* and *Sturgis*, *CC.*, concur.

PER CURIAM:—The foregoing opinion by HYDE, C., is adopted as the opinion of the court. All the judges concur.